THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIE RICHARDSON and CHARLES WADE, Appellants.

First Department, March 31, 1966.

*George B. Adams, Jr.,* of counsel (*Anthony F. Marra,* attorney), for appellants.

*Alan F. Leibowitz* of counsel (*Michael Juviler* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

RABIN, J. Defendants, Willie Richardson and Charles Wade, were convicted of robbery in the first degree. At the trial, the People relied primarily on the testimony of the victim, one Chong, a Chinese waiter, who testified as follows: On July 16, 1963, at around 1:30 A.M. he returned from his job to his home in the Alfred E. Smith project, and was followed into the elevator of the building in which he resides by three young men. When the elevator reached the eighth floor, two of the men left. The third man continued to the tenth floor where Chong lives and, as Chong stepped out of the elevator, he was attacked by the third man. The other two men then rejoined the third and participated in the attack. Chong's jacket was pulled over his

head and he was struck with a hard object. Twenty dollars was removed from his wallet. The attackers then fled.

At the trial, Chong identified the appealing defendants, Richardson and Wade, and the defendant Bowie as his attackers.

On the same day of the attack, Chong was taken to the Housing Authority's police office, and he there identified, first Wade and Bowie, and later on, Richardson. At the trial, it was brought out that at the hearing in Criminal Court, Chong testified that the police officer pointed to Richardson when he asked Chong whether Richardson was one of those involved in the robbery. However, Chong denied that this had been done. The People rested its case solely on the testimony of Chong. The defense, through the testimony of Detective Stern, cast some doubt on the identification of the defendants by Chong, in that soon after the robbery occurred, Chong, upon being questioned could give only a vague description of his assailants, indicating only their approximate height and race, and also indicating that he would not be able to recognize his assailants if he saw them again.

After the defense called defendant Wade's mother, and a character witness for defendant Bowie, the defense rested. The People, thereupon, moved to reopen its case, which motion was granted. The People called Grantley Crichlow, a guard for the New York City Housing Authority. Crichlow testified that on July 15, 1963, at about 11:30 P.M., he saw three young men sitting on a bench near the project. The men were identified by the witness as the three defendants. Crichlow stated that he saw the three men again around 1:00 A.M. on July 16, and indicated that a fourth was present. Crichlow also stated that he saw the three enter the premises occupied by Chong, at around 1:20 A.M., but did not recall seeing Chong enter the premises. It was brought out, however, that Crichlow, after hearing of the commission of the crime during the same tour of duty, did nothing until the evening of July 16, when he returned to duty and then spoke to Patrolman Phipps of the Housing Authority police.

Patrolman Phipps was called by the People and testified that he observed four youths acting in a disorderly manner, and ordered them to disperse. About one hour later, at 12:30–1:00 A.M., on July 16, 1963, the four returned to the area of the premises involved. Phipps also testified to a conversation he had with the defendants, after he had placed them under arrest, and after Chong had identified the defendants. Phipps testified that as he brought the defendants to the Criminal Court, and as he was placing them in the cell, immediately prior to their arraignment, he asked the defendants if they could tell him

" who was the fourth party who walked away with the suitcase just before the robbery was committed ". The defendants Richardson, and Wade, replied that they would " think about it, we'll let you know ".

It is our opinion that the admission into evidence of such inculpatory statements, made at a time when arraignment was about to take place, was improper, and in the circumstances of the case, constitutes reversible error. There is no doubt that the statements were inculpatory. The defendants' contention at the trial was that at the time the crime was committed, they were not in the area. The statements attributed to the defendants by Patrolman Phipps could have indicated quite to the contrary, that the defendants were in the area.

The recent decisions in the area compel a finding that the statements were not admissible. In *People* v. *Meyer* (11 N Y 2d 162) where the defendant had been informed, upon arraignment, of his right to counsel, and requested none, the court held (pp. 164–165) : " An arraignment after an arrest must be deemed the first stage of a criminal proceeding * * * In reason and logic the admissibility into evidence of a post-arraignment statement should not be treated any differently than a post-indictment statement. A statement so taken necessarily impinges on the fundamentals of protection against testimonial compulsion, since the jury might well accord it weight beyond its worth to reach a verdict of guilty * * * We thus conclude that any statement made by an accused after arraignment not in the presence of counsel as in *Spano* [v. *New York,* 360 U. S. 315], [*People* v.] *Di Biasi* [7 N Y 2d 544] and [*People* v.] *Waterman* [9 N Y 2d 561] is inadmissible."

The *Meyer* rule was followed in *People* v. *Rodriguez* (11 N Y 2d 279) where there was a sworn information charging the defendant with first degree murder. The defendant was brought before a Justice of the Peace where the charge was read to him. However, the arraignment proceedings were adjourned. Some hours before the postponed arraignment was held, the defendant was questioned by the police and he confessed. The court held such confession inadmissible, stating that (p. 284) " It is the interrogation, in the absence of counsel, after the criminal proceeding has been commenced, whether by grand jury indictment or by a charge placed before a magistrate following an arrest, which is forbidden."

We cannot see any reason or logic which would compel a distinction between this case and *People* v. *Rodriguez* (*supra*). While the statements were made prior to arraignment, they were made in the courthouse with the arraignment imminent—

the defendants being held in the cell in the courthouse, waiting for their case to be called. The judicial process therefore, had in effect, begun. We are of the belief that at the time the statements were made, the defendants were entitled to counsel.

We note that the *Meyer* principle has been applied to pre-arraignment statements. In *People* v. *Fleischmann* (43 Misc 2d 200) (cited with approval in *People* v. *Bodie,* 16 N Y 2d 275), the complainant swore to a complaint charging the defendant with the theft of an automobile, and thereafter a warrant of arrest was issued. The defendant, upon being questioned 10 days after the issuance of the warrant, confessed to the crime. The court held the evidence inadmissible since the judicial process had been invoked. It was, as is here, the People's contention that since the statements were not postarraignment statements, the defendant's constitutional rights were not violated.

We agree with the analysis in *People* v. *Fleischmann.* The rationale of the *Meyer* and *Rodriguez* decisions is "that a confession or admission made *after the commencement of a judicial proceeding* on a charge relating to the confession or admission is not admissible in evidence if such confession or admission was made in the absence of counsel. * * * Once the judicial process has been invoked * * * judicial concern for the defendant's rights makes his interrogation in the absence of counsel ' an impermissible step in the progress of the criminal cause '." (*People* v. *Fleischmann,* p. 201. See, also, *People* v. *Santmyer,* 20 A D 2d 960.)

As noted, we feel the rule enunciated in *Meyer* (*supra*) is applicable here. The situation is not unlike that in *Rodriguez,* where the arraignment had begun but was postponed and continued at a later date. To distinguish this case, where the defendants were awaiting arraignment, would be to put form over substance. Defendants were at a point far past the investigatory, or accusatory stage — in fact, they were then defendants in the courthouse awaiting trial, and therefore their constitutional right to counsel should be deemed to have attached. Thus, the inculpatory statements were inadmissible.

We note, too, that the inculpatory statements were not merely cumulative in their evidentiary effect. The accuracy of the identification by the witness, Chong, was cast in doubt. The testimony of the other identifying witnesses merely placed the defendants in the area, and indeed contained certain discrepancies. Each of the defendants claimed alibis, and hence the inculpatory statements could have shifted the weight of the evidence in the minds of the jurors.

In passing, we also find it necessary to comment on the conduct of the District Attorney in the presentation of his case, resulting in the reopening of the People's, as well as the defendants' case. On this appeal, the District Attorney stated that defendant Bowie's opening statement indicated that Bowie, and an alibi witness, would be called to the stand. However, neither Bowie nor his proposed witness took the stand by the time the defense rested. It is argued that the prosecution had been saving the two Housing Authority officers to rebut the expected alibi testimony. While we do not hold that the court, in furtherance of justice, should not have allowed the reopening of the People's case, we feel constrained to note that the prosecution's attempt at gaining a tactical advantage was not justified. The testimony of the officers who saw the defendants in the area at the time of the crime, should have been presented on the People's direct case and not held for rebuttal. It is the duty of the People to present the full case on which it relies to the jury. Moreover, the tactics used could be deemed to have prejudiced the defendants considerably, for the alibis offered by the defense — when it reopened its case — appeared to be an afterthought. The prosecutor should not be allowed to so subvert the presentation of the evidence as was here done.

Accordingly, the judgments should be reversed on the law and a new trial ordered. [See 25 A D 2d 823.]

BOTEIN, P. J., BREITEL, EAGER and BASTOW, JJ., concur.

Judgments of conviction unanimously reversed, upon the law and upon the facts, and a new trial ordered.