THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURICE LOCKWOOD, Appellant.

First Department, December 16, 1976

*Norman A. Olch* for appellant.

*Jane Louise Koch* of counsel *(Richard M. Joel* with her on the brief; *Mario Merola, District Attorney),* for respondent.

SILVERMAN, J. Defendant appeals from his conviction on jury trial of attempt to commit the crime of robbery in the first degree.

The case presents perplexing and grave problems as to the admissibility of defendant Lockwood's statement to the police officer, "We went down the subway, we knew we were going to rip somebody off," under various exclusionary rules covering statements by an arrested defendant. But I think that even if the admission of that statement was error, it was harmless error beyond a reasonable doubt. (See *People v Crimmins,* 36 NY2d 230, 237, 242 [1975].)

Here, as in *People v Sugden* (35 NY2d 453, 463 [1974]): "On the entire record, the inescapable conclusion is that the conviction would not have been avoided even if the * * * confession had been excluded, and, hence, the error, if one there be, was harmless." For if we delete the statement, the remaining evidence conclusively shows the defendant's guilt. It shows, without contradiction, that the police officers observed the defendant Lockwood and his codefendant Collins in the street; saw them apparently following the complainant Fahey; saw Fahey stop at a store window on his way to the subway; saw the two defendants go down into the subway entrance; saw Fahey go down into the subway entrance; and shortly thereafter saw the two defendants come running out of the subway, whereupon the officers seized the defendants. The officers further testified that a pair of scissors fell from the codefendant's person. Fahey testified that he grew suspicious of the defendants while he was still in the street; that he stopped at the store window and let them pass him; that when he went down into the subway, at the bottom of the stairs, the two defendants grabbed him tearing his sweatshirt and, holding a pair of scissors and a knife to his throat, said, "We want to talk to you, man"; that Fahey screamed and broke away from the defendants and ran toward the token booth; that the defendants ran out of the subway; that shortly thereafter one of the officers found Fahey; that Fahey came out of the subway, saw the two defendants and immediately identified them as the culprits. There was no evidence the other way or any that cast a shadow of doubt on any of this. In these circumstances no reasonable jury in the City of New York could have any reasonable doubt but that defendants were

attempting to rob Fahey by using or threatening the immediate use of a dangerous instrument, i.e., they were attempting to commit the crime of robbery in the first degree, and that is what the jury convicted them of. With or without Lockwood's statement to the police, conviction was inevitable. For these reasons, the admission of the statement, if error, was harmless beyond a reasonable doubt.

The dissenting opinion points out problems with respect to the admissibility of defendant Lockwood's statement. But these problems do not alter the fact that in this case the error was harmless beyond a reasonable doubt. Delete the statement and the remaining evidence still demonstrates defendant's guilt conclusively and beyond any possibility of a jury verdict the other way. Nor do I think that *People v Ramos* (40 NY2d 610 [1976]) cited in the dissenting opinion, requires a different result, for *Ramos* involved the defendant's plea of guilty, while the present case involves a jury verdict after trial. A defendant has an absolute right to maintain a plea of not guilty and insist on a trial. Whether his insistence is rational or irrational, wise or unwise, is quite irrelevant. So, it is not an answer to a claim that the improper denial of the suppression motion may have influenced a plea of guilty to say that a rational intelligent defendant would still have pleaded guilty. Furthermore, at the time of a plea of guilty, before trial, no one can predict how conclusive the evidence at the trial will be or what unexpected developments there may be at the trial. In the *Ramos* case, the Court of Appeals said (p 619), "It is enough in this case to note that the confession was a likely factor which might have induced the plea and might have affected substantially a verdict upon a trial."

But here we deal with a jury verdict after trial. We know what the evidence was. No doubt an unreasonable jury could have acquitted the defendants. But we must assume a reasonable jury—a jury not free to indulge in whim or caprice but bound by its oath "to render a verdict according to the law and the evidence" (CPL 270.15, subd 2). And on the evidence that was presented at the trial and which we now know, no such jury would have acquitted these defendants.

Without in any way detracting from the seriousness of the question as to whether the statement was admissible I should perhaps note that although the detention facilities here involved were physically in the courthouse, those facilities were not under the jurisdiction or supervision of either the court or

the Department of Correction. They were under the supervision and control of the Police Department as part of the central booking procedure adopted in the effort to improve and speed up police booking procedures in the Bronx. It is thus arguable that these detention facilities are really a substitute, and a preferable one, for police station facilities. I also note that the Criminal Court complaint had not yet been prepared at the time the defendant Lockwood made his statement. Perhaps these factors should not make a difference; but they are among the reasons why I have referred to the problems of admissibility as "perplexing and grave." As I say, these considerations do not alter the fact that the admission of the statement, if error, was harmless beyond a reasonable doubt.

Appellant complains of the District Attorney's stating to the jury that the evidence was uncontradicted, as it was. Of course a defendant is entitled not to have the jury draw any unfavorable inference from defendant's failure to testify (CPL 60.15, subd 2) and the prosecutor may not suggest to the jury that they should draw such an inference. But the defendant's failure to testify is not evidence of anything. In particular, it does not reduce uncontradicted evidence to contradicted evidence. In my previous discussion of the harmlessness of the possible error in the admission of Lockwood's statement, I noted the fact that there was no contradictory evidence. That seems to me to be a relevant consideration both for this court and the jury. It would seem to me that the prosecutor could plainly say to the jury, "You do not have here a problem of resolving contradictions in evidence. All the evidence is one way." The statement by the prosecutor that the evidence is uncontradicted amounts to the same thing. There is authority supporting the propriety of such a statement. (See e.g., *People v Hovey,* 92 NY 554, 559 [1883], where the court repeated the prosecution reference to the "uncontradicted evidence".) (See, also, *People v Leonardo,* 199 NY 432, 446 [1910]; *People v Bolster,* 24 AD2d 774 [1965]; *People v Rodriguez,* 38 NY2d 95 [1975].) Again, if this was error, it was harmless.

The judgment appealed from should be affirmed.

CAPOZZOLI, J. (dissenting). It is, of course, clear that, in order to admit an incriminating statement by a defendant, the voluntariness of such a statement must be proven beyond a reasonable doubt. *(People v Huntley,* 15 NY2d 72.) The prosecution concedes that the trial court erred in applying the so-

called "Clear and convincing proof" standard. Also, in a case where a defendant does not take the stand and the evidence is practically one-sided, it is improper for the trial attorney, representing the People, to argue to the jury in summation that the evidence adduced by the People is "overwhelming and certainly uncontradicted", as was done in this case. (*People v Gould,* 25 AD2d 160; *People v Yore,* 36 AD2d 818.)

However, if these two improprieties were the only deficiencies found in the record, they might possibly be overlooked on the theory that the other evidence in the case is otherwise convincing. But the record discloses a serious impropriety in the manner in which the People treated this defendant following his arrest. It appears that, although the defendant was arrested on October 17, 1973, at about 10 P.M., he was not brought to the courthouse for arraignment until about 20 hours thereafter. On the day following his arrest, October 18, the defendant was brought to the courthouse detention cells, where prisoners customarily wait to be arraigned. While awaiting arraignment, the defendant was taken out of detention and brought by the police to Assistant District Attorney Bassik, at the latter's request. This action, of necessity, resulted in delaying the arraignment of the defendant before the Judge, as was his right. The District Attorney did, I believe properly, warn the defendant as to his rights and then proceeded to question him. This resulted in an incriminating statement made by defendant, which was used at the trial as evidence against him.

In *People v Meyer* (11 NY2d 162) the court held that an arraignment, after an arrest, is the first stage of a criminal proceeding and that a statement made by an accused to a police officer, after arraignment, is not admissible against him. However, the court did say that an accused may waive such a fundamental right, but did not do so in the case before it.

Following the *Meyer* case *(supra)* the Court of Appeals in *People v Rodriguez* (11 NY2d 279, 284) considering a similar question, said:

"as we recently held in *People v. Meyer* (11 N Y 2d 162), it matters not that the defendant gave his statement before indictment. It is the interrogation, in the absence of counsel, after the criminal proceeding has been commenced, whether by grand jury indictment or by a charge placed before a magistrate following an arrest, which is forbidden. The procedure followed by the law enforcement officers not only vio-

lated Carde's [defendant's] right to assistance of counsel (N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 8, 188, 308, 609), but also infringed upon his privilege against self incrimination. * * *

"The present case may not be distinguished from *Meyer* (11 N Y 2d 162, *supra)* on the ground that the arraignment was not concluded until after the police had finished questioning the defendant. The indisputable fact is that the criminal proceeding had been begun before the police elicited the January 25th statement from him."

In *People v Richardson* (25 AD2d 221) it was held that the receipt in evidence of inculpatory statements made by defendants, after they were arrested and as they were being placed in a jail cell in the courthouse immediately prior to arraignment was improper and constituted reversible error.

In the last-cited case, at page 223 of the opinion, the court said: "It is our opinion that the admission into evidence of such inculpatory statements, made at a time when arraignment was about to take place, was improper, and in the circumstances of the case, constitutes reversible error."

In commenting on the case of *People v Rodriguez (supra)* the court, in the *Richardson* case *(supra,* pp 223-224) said: "We cannot see any reason or logic which would compel a distinction between this case and *People v. Rodriguez (supra).* While the statements were made prior to arraignment, they were made in the courthouse with the arraignment imminent—the defendants being held in the cell in the courthouse, waiting for their case to be called. The judicial process therefore, had in effect, begun. We are of the belief that at the time the statements were made, the defendants were entitled to counsel." Later, on the same page of the opinion, the court said: "As noted, we feel the rule enunciated in *Meyer (supra)* is applicable here. The situation is not unlike that in *Rodriguez,* where the arraignment had begun but was postponed and continued at a later date. To distinguish this case, where the defendants were awaiting arraignment, would be to put form over substance. Defendants were at a point far past the investigatory, or accusatory stage—in fact, they were then defendants in the courthouse awaiting trial, and therefore their constitutional right to counsel should be deemed to have attached. Thus, the inculpatory statements were inadmissible."

I have serious doubts that the errors in this case, when lumped together, can be excused on the theory that they were

harmless. The prosecution argues that, despite errors in the record, the result reached in this case should not be disturbed on the theory of harmless error. If we were faced only with the erroneous standard of proof test and the improper reference to the testimony of the prosecution being uncontradicted, I might be inclined to go along with the contention of the People, but, when we add the highly improper behavior of the authorities in disregarding this defendant's rights, as disclosed by what preceded the statement secured from him by Assistant District Attorney Bassik, I find it difficult to go along with the People's contention.

It is also noteworthy, though possibly not determinative by itself, that, when the defendant was in the station house, shortly after his arrest on October 17, 1973, he informed the police officers that he wished to call his attorney. In their presence he telephoned for his lawyer and, although his attorney was not available, he spoke to someone who answered the telephone.

I do not share the view of the majority that the admission of the statement given by the defendant to the prosecutor was harmless. This was a formal statement, duly recorded in the form of questions and answers, and reported by the testimony of the Assistant District Attorney and it is difficult to measure the impact of this evidence on the jury. No one can say for sure that the result would necessarily have been the same if this statement had been suppressed.

As late as October 26, 1976, in the case of *People v Ramos* (40 NY2d 610) the Court of Appeals held that the failure of the trial court to exclude a defendant's statement, which was improperly obtained, could not be excused on the theory that there was other evidence in the case which would have sufficed to lead to the same guilty determination, even if the statement were excluded.

In the last-cited case (pp 618-619) the court said:

"But in anticipation of our determination that the defendant's statement should be suppressed, the People contend, nevertheless, that the guilty plea taken by the defendant should be allowed to stand. The prosecution argues that the statement would not be essential for a conviction and therefore the failure on the part of the trial court to suppress the statement did not provide the catalyst for the defendant's plea of guilty. We cannot agree.

"Although there may be cases in which the error of admit-

ting excludable evidence may not require reversal, it cannot be gainsaid that a confession is a most serious matter in the trial of a criminal case. It is enough in this case to note that the confession was a likely factor which might have induced the plea and might have affected substantially a verdict upon a trial.

"Accordingly, although there is other evidence in support of the defendant's guilt, the proper disposition would call for restoring the case to its prepleading status".

A fortiori, since the case at bar was a trial and not a plea of guilty, surely the language last cited from *People v Ramos* is particularly applicable.

Also the evidence is far from convincing that, under the circumstances of this case, there was a knowing waiver by the defendant of his rights to counsel. In fact, the lawyer, who had been called from the police station at the time of the defendant's arrest, was present at the arraignment following the questioning by Bassik and represented the defendant.

The reliance of the majority on the quotation cited in the early part of its opinion from *People v Sugden* (35 NY2d 453) is entirely misplaced. The language which is quoted is correctly quoted, but what the majority fails to indicate is the fact that, in that case, the defendant took the stand and testified as to how he killed the victim. There was never any doubt that he had committed the homicide. The question raised at the trial was the sanity of the defendant. The defense was insanity. Therefore, the fact that a separate confession, made out of court by the defendant, was unnecessarily introduced, could not have affected the conclusion reached by the jury. There was no prejudice to the defendant by the admission of this confession because it was conceded that he had committed the killing.

I am of the opinion that the statement to the Assistant District Attorney should have been suppressed and the failure to do so was prejudicial error.

I have also examined the cases relied upon by the majority, and cited at the end of its opinion as authorities for the proposition that a prosecutor can with impunity state to the jury that the evidence is uncontradicted in a case where the defendant fails to take the stand. To quote the actual language of the majority opinion it is as follows: "It would seem to me that the prosecutor could plainly say to the jury, 'You

do not have here a problem of resolving contradictions in evidence. All the evidence is one way.' "

I shall discuss each case relied upon separately. *People v Hovey* (92 NY 554) is one of the cases cited. In that case the defendant *did* take the stand. The contention of the majority is respectfully directed to the fact that, when the court, in its charge to the jury, spoke of uncontradicted evidence, it was referring to the wife of the defendant who could have contradicted evidence already in the record, but the defendant did not allow her to be examined. Hence, the comment about uncontradicted evidence. The case is not relevant to the issue raised in the case at bar.

Another case cited by the majority is *People v Leonardo* (199 NY 432). Again the defendant took the stand and the reference to a nontestifying eyewitness was addressed to the father of the defendant who was not called.

The case of *People v Bolster* (24 AD2d 774) is still another case relied upon by the majority and, yet, it is crystal clear that it does not stand for the proposition urged by the majority. The court said: "The prosecutor commented briefly in summation to the effect that the defendant, had he been so disposed, could have called as witnesses his wife, his two brothers and firemen other than those who had testified for the People. * * * The observations made contained no reference to the failure of defendant to testify (Code Crim. Pro., § 393) and hence cannot be viewed as improper." How can the majority use this case in support of its position?

The last case, relied upon by the majority, is *People v Rodriguez* (38 NY2d 95, 98-99) and an examination of that case discloses the following language: "Ordinarily, a court may not comment upon a defendant's failure to testify or otherwise to come forward with evidence, but, once a defendant does so, his failure to call an available witness who is under defendant's control and has information material to the case may be brought to the jurors' attention for their consideration. [Citing authorities.] * * * respected authorities make clear that, so long as comment or instruction on the absence of the witness is unaccompanied by one on the accused's personal failure to testify, no constitutional right is infringed".

In conclusion, for the reasons given, I would reverse and order a new trial.

BIRNS, J., concurs with SILVERMAN, J.; LANE, J., concurs in result only; MURPHY, J. P., and CAPOZZOLI, J., dissent in an opinion by CAPOZZOLI, J.

Judgment, Supreme Court, Bronx County, rendered on April 23, 1974, affirmed.