THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RONALD ROUCCHIO, Appellant.

First Department, October 18, 1979

APPEARANCES OF COUNSEL

*Irving Anolik* for appellant.

*Bruce Allen* of counsel *(Mark Dwyer* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Convicted after separate trial of murder in the second degree on an indictment charging him and one Arabadjis with felony murder and attempted robbery in the slaying and aborted holdup of a 20-year-old taxicab driver, defendant does not challenge the sufficiency of the evidence. Rather, he contends, *inter alia,* that an admission which he made to a police officer during the prearraignment process and after he had been surrendered by his attorney with instructions that he not be questioned was improperly received at his trial.

Citing *People v Kaye* (25 NY2d 139), the trial court, after a suppression hearing, found that defendant's statement was made "gratuitously and spontaneously and without either solicitation or questioning".

Defendant not only disputes the finding of spontaneity, he

argues that "a statement obtained from an accused after arraignment, even if 'voluntary' and 'unsolicited' is inadmissible". We disagree.

The crime occurred at 1:00 A.M. on April 13, 1977. The investigation of Detectives Finelli and Scarcella, who had been assigned to the case, eventually put them on the trail of defendant and Arabadjis. At about midnight on April 14th-15th, Detective Finelli had a telephone conversation with defendant's father, as a result of which, the following morning at 10:00 A.M., defendant, accompanied by an attorney, surrendered. Upon his arrival at the precinct defendant was arrested and charged with murder. He was given the *Miranda* warnings and signed a statement acknowledging that fact. At the same time his attorney gave instructions that defendant was not to be questioned, an admonition which Detectives Finelli and Scarcella faithfully obeyed.

Defendant was thereafter taken to the Criminal Courts Building in Manhattan for arraignment, where he was turned over to the police unit on duty and placed in an area known as the "pens." At about 7:30 that evening he was escorted to the "ROR" room by Officer Vanatta, a prearraignment officer, for a background interview as to whether he would be a suitable candidate for bail or parole.[1]

Vanatta, who had come on duty at about 3:30 P.M., knew that defendant had been charged with a homicide, but he was not familiar with any of the underlying details. He had been given orders by his supervisors not to involve himself in the investigation of cases. While leading defendant from the pens Vanatta explained that he would be taking the place of the arresting officer. On the stairway down to the ROR room, defendant, according to Vanatta, said "my lawyer told me not to say anything to anybody but I have to tell you". Vanatta said "yes", and motioned defendant to continue in the direction of the door to the ROR room. Once inside the room defendant went on to say "we didn't mean it to go the way it did. I hadn't worked in a long time. I would give my arm to bring him back".

Later that night Vanatta spoke to defendant's attorney, saying "do you know what that dummy of yours just did downstairs? Made statements to me." He also reported the

---

1. This is a standard part of the prearraignment process, but is neither a police nor prosecutorial function. The interview is conducted by an independent agency which submits the information obtained to the court with its recommendation, if any.

statements to his superior officer and to the Assistant District Attorney on duty in the arraignment part. Within the week, he discussed the incident with the Assistant District Attorney to whom the case had been assigned. Vanatta also made a contemporaneous written memorandum noting the statements.

In *People v Howard* (62 AD2d 179, affd 47 NY2d 988) this court had occasion to consider, in a somewhat different factual context, the issue of whether a defendant's statement was spontaneous or the result of what might be called "latent questioning". We noted that a police officer's frame of mind as to whether he expected a response is not conclusive in determining whether a defendant's statement was truly spontaneous. Rather, what is determinative is whether an officer's remarks, although seemingly innocuous, precipitate a conversation which contains an incriminating statement. In affirming our determination that there had indeed been police questioning, the Court of Appeals did not reach the issue of whether the result would be the same had the officer's statements not involved a matter related to the charges for which the defendant was being held. *(People v Howard,* 47 NY2d 988, 989, *supra.)* As the Court of Appeals has recently noted in *People v Maerling* (46 NY2d 289, 302-303), "The spontaneity has to be genuine and not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed".

In this case, defendant, on his own initiative, made statements which were not prompted by anything the police officer said or did. Indeed, Officer Vanatta did not take any active part in the encounter, other than to say "yes" when defendant indicated that he had something to say. We do not construe this as a form of questioning, of even the most subtle or latent kind and, thus, agree with Trial Term's finding of spontaneity.

In arguing that there is a rule which, per se, proscribes the use of any postarraignment statement, defendant relies principally on *People v Meyer* (11 NY2d 162, 164-165), in which the Court of Appeals held inadmissible "a voluntary, unsolicited statement made by an accused to a police officer after arraignment" because "[a] statement so taken necessarily impinges on the fundamentals of protection against testimonial compulsion". Our view, however, is that *Meyer* is, at least, factually distinguishable from the instant case since Meyer and the

police officer engaged in a "fairly long conversation" in which the defendant incriminated himself.

■ At the outset we note that although defendant's admissions were made prior to his actual arraignment, it seems clear to us that once an accused is brought to the courthouse and is awaiting arraignment the criminal proceeding has commenced. (See, e.g., *People v Lockwood,* 44 NY2d 769, revg on dissent at 55 AD2d 17, 20-25; see, also, *People v Richardson,* 25 AD2d 221, 223-224; *People v Wallace,* 17 AD2d 981.)[2]

■ The constitutional rights of an accused or suspect to remain silent and to the aid of counsel are now fairly well defined. In the investigatory stage preceding the inception of a criminal action, "if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent" *(Miranda v Arizona,* 384 US 436, 467-468), and "if police propose to interrogate a person they must make known to him that he is entitled to a lawyer" *(id.,* at p 474). Furthermore, "once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel, unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel". *(People v Arthur,* 22 NY2d 325, 329.)[3]

It has been held that "[t]he right of an accused to counsel as a procedural safeguard in our system of government enjoys equal eminence" with the privilege against self incrimination. *(People v Donovan,* 13 NY2d 148, 151.) "The *Donovan* and *Arthur* cases *(supra)* extended constitutional protections of a defendant under the State Constitution beyond those afforded by the Federal Constitution." *(People v Hobson,* 39 NY2d 479, 483-484, *supra.)* However, "the fact that a defendant is represented by counsel in a proceeding unrelated to the charges under investigation is not sufficient to invoke the rule [citations omitted]. Moreover, the rule of the *Arthur* case *(supra)* does not render inadmissible a defendant's spontaneously volunteered statement". *(People v Hobson,* 39 NY2d 479, 483.)

---

2. For a synthesis of the decisional law in this State on when a criminal proceeding commences see the dissenting opinion (BREITEL, J.) in *People v Lopez* (28 NY2d 23, 26).

3. But, see, *People v Robles* (27 NY2d 155). Whatever disquieting doubts were created by *Robles,* decided two years after *Arthur,* about the continuing vitality of the *Arthur* rule, were subsequently dispelled by the Court of Appeals in *People v Hobson* (39 NY2d 479).

■ In *People v Kaye* (25 NY2d 139, 145) decided seven years after *Meyer,* the Court of Appeals, noting that "[t]ruly voluntary confessions constitute a highly trustworthy type of evidence", found admissible the postarrest, spontaneous statements made by a defendant to police officers after his lawyer had given him instructions that he not make any statements. The court also pointed out that its research had failed to disclose a single decision of any court holding inadmissible a volunteered confession made in the absence of counsel. *(Id.,* at p 144.) Thus, it is well settled that a spontaneous statement is not rendered inadmissible merely because, at the time it is made, a defendant is represented by counsel.

Since, however, *Arthur, Hobson* and *Kay* involve prearraignment statements, they are not, prima facie, dispositive of the critical question here, whether, as defendant contends, the arraignment constitutes a line of demarcation, subsequent to which an accused's statement, even if volunteered and spontaneous, is nonetheless constitutionally infirm. Not unmindful of the court's language in *People v Meyer* (11 NY2d 162, *supra),* we do not believe that any such rule exists. In *Meyer,* as already noted, the confession, although voluntarily made, was realized during a lengthy conversation between the accused and a police officer, a circumstance which would destroy the spontaneous nature of the defendant's statement if, indeed, it ever existed. Here, as already noted, the statement was not induced by any form of interrogation. Nor was it attended by any undue delay in arraignment. (See *People v Lockwood,* 44 NY2d 769, revg on dissent at 55 AD2d 17, 20-25, *supra.)*

In *People v Rodriguez* (11 NY2d 279), decided one month after *Meyer,* the court discussed the *Meyer* decision in suppressing a statement of a defendant who had been brought to a Justice of the Peace for arraignment, but because of language difficulties, was not arraigned until two days later. In the interim he participated in an interrogation and made inculpatory statements. The court stated (p 284): "as we recently held in *People v. Meyer* * * * it matters not that the defendant gave his statement before indictment. It is the interrogation, in the absence of counsel, after the criminal proceeding has been commenced, whether by grand jury indictment or by a charge placed before a magistrate following an arrest, which is forbidden. The procedure followed by the law enforcement officers not only violated [defendant's] right to assistance of counsel [citations omitted], but also infringed

upon his privilege against self incrimination." From this excerpt it would appear that the operative defect in *Meyer* was not that the admission was postarraignment, but that, in the absence of counsel, postarraignment police interrogation occurred which resulted in the admission. (Accord, *People v Russo,* 92 Misc 2d 858; *People v Brown,* 86 Misc 2d 339.)

Even before *Meyer* it had been the rule that a postarraignment interrogation of an accused, which takes place in the absence of counsel, is improper. *(People v Waterman,* 9 NY2d 561; *People v Di Biasi,* 7 NY2d 544; but, see, *People v Downs,* 8 NY2d 860, cert den 364 US 867.) As was noted by the court in *Waterman (supra,* p 564), "Such questioning * * * impinged upon the defendant's twofold rights to the assistance of counsel and to freedom from testimonial compulsion." By statute (CPL 170.10, subd 3; 180.10, subd 3; 210.15, subd 2) which has its foundation in our Federal Constitution *(People v Vitusky,* 155 App Div 139; *Gideon v Wainwright,* 372 US 335), a defendant has the right to the aid of counsel at arraignment. Yet, as already stated, "the rule of the *Arthur* case *(supra)* does not render inadmissible a defendant's spontaneously volunteered statement" even where a lawyer has entered the case. *(People v Hobson,* 39 NY2d 479, 483, *supra.)*

Furthermore, even under *Miranda,* the effect of which was to accelerate definitively the attachment of an accused's Fifth and Sixth Amendment rights, which theretofore had attached at arraignment, to the time he is initially taken into custody, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected" *(Miranda v Arizona,* 384 US 436, 478, *supra).*

■ In the final analysis, the focus of any scrutiny into the admissibility of an incriminating statement, be it during either custodial investigative interrogation or postarraignment, must be directed to whether the defendant's Fifth and Sixth Amendment privileges have been honored. The use of a postarraignment statement, truly spontaneous, made in the absence of counsel, like its prearraignment counterpart, violates neither of these rights. (See *People v Russo,* 92 Misc 2d 858, *supra; People v Brown,* 86 Misc 2d 339, *supra.)*

Finally, we take note that 16 years after *Meyer,* the Court of Appeals, although reversing a judgment of conviction for other reasons, in discussing the trial court's admission of a postindictment custodial confession, noted that "if the record contained factual support for the Trial Judge's finding [of

spontaneity], we could not interfere". *(People v Maerling,* 46 NY2d 289, 301, *supra.)* We think that this language is a clear expression that *Meyer,* which has never been expressly overruled, should not be construed as stating a rule barring a postarraignment statement, even if spontaneous and unsolicited.

We have examined defendant's other contentions and find that they are without merit.

Accordingly, the judgment, Supreme Court, New York County (SILBOWITZ, J., at suppression, B. ROBERTS, J., at trial and sentence), rendered June 7, 1978, convicting defendant of murder in the second degree, and sentencing him thereupon to 15 years to life, should be affirmed.

KUPFERMAN, J. P., SANDLER, LANE and LUPIANO, JJ., concur.

Judgment, Supreme Court, New York County, rendered on June 7, 1978, affirmed. [See 72 AD2d 540.]