## (April 13, 1982)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH JONES, Appellant. — Judgment of the Supreme Court, New York County (Blyn, J., at *Huntley* hearing; George Roberts, J., at plea and sentence), rendered May 19, 1980, convicting defendant after a plea of guilty of attempted robbery in the second degree and sentencing him to one to three years' imprisonment, reversed, on the law and the facts, the plea of guilty vacated, defendant's motion to suppress granted, and the action remanded for further proceedings. The owner of the coffee shop who had been robbed at gunpoint gave the police the name of a former employee, the defendant, as the robber. Defendant was arrested in his home after his mother allowed the police officers to enter and search. Detective Gillies, after ordering defendant out of a closet and taking him to the living room, "leaned up" to defendant and asked him where the gun was. The policeman did not give defendant any *Miranda* warnings before asking this question. Gillies did say that he would obtain a search warrant if defendant did not give him the answer. Defendant responded that the gun, borrowed from a friend, was not in the apartment. The defendant later testified he had given his answer to prevent further harassment of his mother and pregnant sister. Upon being taken to the precinct, the defendant was, for the first time, read his rights. After an interrogation of at least half an hour the defendant told Detective Gillies that he had used a toy gun in the robbery. Several hours later, the defendant was taken to a detention facility but was not arraigned that day. The next morning Detective Gillies went to the New York Criminal Court building. He spoke to an Assistant District Attorney who asked him to bring defendant to the office. After defendant was brought to that office, he was told the interrogation could delay his arraignment. After being advised of his rights, defendant was questioned without an attorney. The questioning took place in the presence of Detective Gillies. When questioned, the defendant initially denied having a weapon during the incident. Gillies admonished defendant to "tell the truth" and not long afterwards, defendant conceded it was "possible" that the complainant had seen him with a toy pistol. After then being admonished by the Assistant District Attorney to tell the truth, defendant stated that he had been carrying a comb which might have looked like a pistol. On November 2, 1979, after a *Huntley* hearing, the court below suppressed a statement made to Detective Gillies by defendant at the time of his arrest because no *Miranda* warnings had been read. The court also suppressed the statements made at the precinct *after Miranda* warning had been given. The court found that the defendant had been subjected to continuous custodial interrogation, so that the warnings given at the precinct house were insufficient to protect his rights. However, the court refused to suppress the statement which the defendant gave to the Assistant District Attorney on the morning following his arrest, holding that this particular statement was not part of a continuous chain of events. The failure to suppress this last statement given to the Assistant District Attorney constituted error. It should be noted that defendant, at the time he made this statement, had been in custody for over 20 hours. This circumstance, in and of itself, may have constituted a violation of defendant's right to a speedy arraignment (CPL 140.20; see *People v De Jesus,* 63 AD2d 148, 154). In any event, the courthouse interrogation by the Assistant District Attorney under the circumstances of the delay in arraignment, violated defendant's right to counsel. A defendant is entitled to counsel at all critical stages of criminal proceedings. The right to counsel attaches when the criminal action commences (see *People v Blake,* 35 NY2d 331, 339-340). By statute, a criminal action commences with the filing of

an accusatory instrument (CPL 1.20, subd 17; see *People v Samuels,* 49 NY2d 218, 221). However, this right attaches even earlier if significant judicial activity has occurred (see *People v Coleman,* 43 NY2d 222, 225-226). The circumstances present here (i.e., the defendant in custody 20 hours, being interrogated in the courthouse by the Assistant District Attorney at a time he was being held for arraignment) violated defendant's right to counsel. His right to counsel had attached and defendant at no time waived this right to counsel in the presence of a lawyer assigned to represent him (*People v Lockwood,* 44 NY2d 769, revg on dissent 55 AD2d 17, 20). In *Lockwood,* the defendant was not brought to the courthouse for arraignment until about 20 hours after his arrest. While awaiting arraignment, the defendant was taken out of detention and brought to an Assistant District Attorney for questioning. This District Attorney properly warned defendant as to his rights, proceeded to question him and elicited an incriminating statement from him. The Appellate Division in *Lockwood,* observed, as the respondent District Attorney does in the case at bar, that the detention facilities were under the supervision of the police, not the court and the complaint had not been prepared at the time the defendant made his statement. Nevertheless, the dissent which was ultimately upheld (*People v Lockwood,* 55 AD2d 17, *supra,* at p 20), would have suppressed the statements relying, *inter alia,* upon *People v Richardson* (25 AD2d 221), where it was held that the receipt in evidence of inculpatory statements made by defendants after arrested and as they were being placed in a cell in the courthouse immediately prior to arraignment was improper and constituted reversible error (see *People v Lockwood,* 55 AD2d 17, 20, 22, *supra,* dissent per Capozzoli, J.). The record of the suppression hearing shows that counsel for defendant attempted to elicit information relating to the state of mind of defendant at the time when defendant made the statements to the Assistant District Attorney in the presence of the arresting officer. Counsel was prevented from pursuing this line of questioning by the court: "Did you feel an obligation to answer questions as a result * * * [Prosecutor]: Objection. The Court: Sustained. That is a conclusion that you are asking for. [Defense Counsel]: Your Honor, I think the *state of mind* of the witness * * * The Court: The objection is sustained". (Emphasis added.) "A man who makes admissions * * * in violation of his constitutional right to warning and advice may feel so committed by what he has then said that he believes it futile to assert his rights after he has been later advised of them before new questioning begins. This *state of mind* may have an effect on the waiver leading to the later admissions; or on the voluntary nature of those admissions * * * Whether an accused believes himself so committed by a prior statement that he feels bound to make another, depends on his *state of mind* which is a fact question". (*People v Tanner,* 30 NY2d 102, 105-106, emphasis added.) Accordingly, the suppression court committed error when it prevented questioning as to defendant's state of mind at the time of the disputed interrogation. Ordinarily such error would only require a remand for a hearing as to defendant's state of mind, which is a fact question. (See *People v Tanner, supra,* p 106.) However, defendant's statement to the Assistant District Attorney was made in the presence of the detective who had obtained the initial statement without giving the *Miranda* warnings. This same officer who was present when defendant tried to give the Assistant District Attorney an exculpatory statement, still admonished defendant to "tell the truth". "Warnings, to be effective under the combined holdings in *Miranda* and *Westover,* must *precede* the subjection of a defendant to questioning. Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning". (*People v Chapple,* 38 NY2d 112, 115). Because of the circum-

stances here present, where the initial interrogator was present at the questioning by the Assistant District Attorney; where both the detective and the Assistant District Attorney reminded defendant of his prior statement correctly determined by the hearing court to have warranted suppression, and where defendant was cajoled by the same detective to "tell the truth" (i.e., the same story), the defendant never returned to "the status of one who is not under the influence of questioning" (*supra,* p 115). The sequence of events beginning with the first unlawfully obtained statement and ending with the statements made to the Assistant District Attorney, in the presence of the arresting officer, was in reality, a single continuous chain of events. (*People v Chapple, supra,* at p 114.) We also note that the Court of Appeals has stated: "when a conviction is based on a plea of guilty an appellate court will rarely, if ever, be able to determine whether an erroneous denial of a motion to suppress contributed to the defendant's decision" (*People v Grant,* 45 NY2d 366, 379-380). The statute, which grants leave to an appellate court to review an order finally denying a motion to suppress evidence upon an appeal from an ensuing judgment of conviction notwithstanding such judgment is entered upon a plea of guilty, does not indicate what should be the disposition of the appeal when the conviction is based upon a plea and the court finds, as herein, that the denial of the motion was erroneous (CPL 710.70, subd 2). However, under these circumstances, the proper procedure is reversal and vacatur of the plea. (*People v Grant, supra,* at p 377; *People v Ramos,* 40 NY2d 610; *People v Hobson,* 39 NY2d 479.) Concur — Murphy, P. J., Sandler, Bloom, Fein and Asch, JJ.