OPINION OF THE COURT
Leon A. Beerman, J.
The main question presented in this case is whether a *901 criminal defendant is denied his State constitutional right to counsel when he is placed in a holding pen in the courthouse awaiting Criminal Court arraignment and then, after a lengthy delay, the reason for which is not explained, he is taken out of the pen for interrogation and arraigned only after he has given inculpatory statements to the authorities. This court answers the question in the affirmative, and accordingly, orders the inculpatory statements suppressed.
Defendant Roman Moore is charged in indictment No. 4772/ 85 with three counts of attempted robbery in the second degree. A combined Wade/Huntley hearing was held in this court on October 3, 1986. At the hearing, the People called to the stand Police Officers Lisa Swinton, Michael Miskell and William Pepey, as well as Police Detective Frank DeRosalia. The hearing was adjourned until October 9, 1986 for the People to produce Assistant District Attorney Steven Paynter, but the People declined to call him to the stand on that date and rested. The defense called no witnesses. The court finds the testimony of the witnesses to be credible, and makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
At approximately 10:50 p.m. on September 23, 1985, Officer Swinton, on foot patrol, was on the corner of Francis Lewis Boulevard and Merrick Avenue in Queens. The complainant, Andrew DeCosta, drove up in a van and got out, displaying a .22 caliber revolver. He said that he had just been robbed by four men, and that one of them, whom he had shot, was still in the van.
The officer placed DeCosta in custody, took the gun from him, and radioed for assistance. She looked in the van and saw an injured man, who was later determined to be dead and to be named Terrance Cunningham, and a gun on the floor. Officer Miskell arrived, formally arresting DeCosta and handcuffing him.
DeCosta told Miskell that he had been driving a van east on Merrick Avenue when an unidentified person sitting behind him hit him on the head with a gun. Then three other people in the van jumped on DeCosta, who fell out of the van. He saw a gun laying on the street next to him, picked it up, and fired three shots into the van. Then he got back into the van and drove up to Officer Swinton.
As DeCosta finished relating his story, he pointed to defendant Roman Moore and his two codefendants, Timothy Cun *902 ningham and Eric Leite,* who were standing among the crowd that had gathered. DeCosta said that the three had been among those who had assaulted him.
Moore then looked into the van and said that the injured man was his cousin. He explained that he had been in the van with his cousin and that some unidentified persons had tried to rob the van’s passengers and then shot his cousin. Cunningham said that the injured man was his brother, and that DeCosta had abducted his brother and then shot him.
DeCosta was taken to the station house in one police car, and the three defendants in another. Officer Pepey testified that although Moore was not free to leave when he was taken to the precinct, he was not formally arrested until three o’clock the following morning. Pepey spoke to all of the persons involved in the case, and Moore was the second to last person to whom he spoke.
After midnight, but before the 3:00 a.m. formal arrest, Pepey read Moore the Miranda warnings from a card, and Moore waived his Miranda rights and gave a statement. According to Moore, his two codefendants, the deceased, and he were taking a van service from Queens to a movie theatre in Nassau County. During the trip, the driver stopped the van, ran across Merrick Avenue to another van headed in the other direction, and then returned to his own van. At the corner of 231st Street and Merrick Avenue, the van contained only the driver, Moore and his three friends, and two other persons whom Moore did not know. These two persons grabbed the driver and demanded his money. A struggle ensued, shots were fired, and Moore saw the deceased lying dead on the van’s floor.
According to Officer Pepey’s written report, made at 5:30 a.m. on September 24, Moore was charged with robbery in the first degree. Moore’s NYSID sheet was received by the police by 10:29 a.m. that day.
The fingerprinting had been done, not at the precinct, but at Central Booking in the courthouse. Afterward, Moore was placed in the holding pens in the courthouse, awaiting arraignment.
By 6:30 p.m. on September 24, Moore had still not been arraigned. The record is silent as to why.
*903 At 6:30, Detective DeRosalia took Moore out of the cell and placed him in an employee’s lunchroom in the courthouse. There, he read Moore the Miranda warnings from a form, Moore waived his Miranda rights, and then gave a statement. According to this new statement, Moore, his two codefendants, and the deceased had attempted to rob DeCosta pursuant to a preconceived plan, but DeCosta shot the deceased in the struggle and the plan was abandoned.
Between the time Moore gave this second statement at 6:30 p.m. and midnight, Moore gave a videotaped statement to Assistant District Attorney Steven Paynter in DeRosalia’s presence. That third statement was similar in content to the second.
The yellow-back sheet of the Criminal Court papers in this case was prepared for an arraignment on September 24, the day petitioner made his in-custody statements and the day after the incident. However, the felony complaint was not signed or filed with the court until September 25, on which date Moore was arraigned. The record is silent as to the time of these events on the 25th.
CONCLUSIONS OF LAW HUNTLEY ISSUES
Generally, when a defendant is arrested in New York City, he is taken to the local station house for investigation, including interrogation. Then he is taken to Central Booking located in the Criminal Court courthouse, fingerprinted, and placed in a holding pen to await his arraignment. (People v Lockwood, 44 NY2d 769, 770 [1978], revg on dissent below 55 AD2d 17, 20-25 [1st Dept 1976]; People v Lindo, 85 AD2d 643, 645 [2d Dept 1981]; People v Roucchio, 70 AD2d 322, 324 [1st Dept 1979]; People v Collazo, 98 Misc 2d 58, 60-61 [Sup Ct, Bronx County 1978, Rosenberg, J.].)
CPL 140.20 (1) requires that after a defendant is arrested, the accusatory instrument be filed and the arraignment take place "without unnecessary delay”. Usually this statute is observed, with delays in arraignment being justified by such circumstances as that the court is closed (People v Coleman, 115 AD2d 488 [2d Dept 1985]), that the defendant must be fingerprinted and photographed (People v Cooper, 101 AD2d 1, 12-13 [4th Dept 1984]), that the defendant unexpectedly confesses to two unsolved murders (People v Hopkins, 58 NY2d 1079, 1081-1082 [1983]), or that the terms of a Federal grant *904 require a short delay in arraignment (People v Wilson, 56 NY2d 692, 693-694 [1982]).
Every once in a while, however, the police and/or the District Attorney’s office, not being satisfied with the evidence they have thus far obtained against the defendant, decide to delay the filing of the complaint and the arraignment so that they can obtain inculpatory statements from him. In more extreme cases, after the defendant has been processed and placed in the holding pen at the courthouse for arraignment, they hold off on the filing of the complaint and actually pull him out of the pen for interrogation. When, as in the instant case, this was done, the defendant’s right to counsel has been violated.
Under our State Constitution, the right to counsel attaches at the commencement of the criminal proceeding. (People v Samuels, 49 NY2d 218, 221 [1980].) The criminal proceeding commences when the case moves from the investigative stage to the accusatory stage. (People v Lockwood, 44 NY2d, at p 770, revg on dissent below 55 AD2d, at p 22; People v Cruz, 72 AD2d 549, 549-550 [2d Dept 1979]; People v Richardson, 25 AD2d 221, 224 [1st Dept 1966].) For example, the accusatory stage, and thus the commencement of the proceeding, is obviously reached when the accusatory instrument — whether it be an indictment, information, or complaint — is filed with the court. (People v Samuels, 49 NY2d, at p 221.)
But the proceeding can commence even before the filing of the accusatory instrument. For example, the case moves from the investigatory to the accusatory stage when the case is ready to proceed to the latter stage, but the filing of the accusatory instrument is unnecessarily delayed so that a statement can be taken from the defendant in the absence of counsel. (People v Hopkins, 58 NY2d, at pp 1081-1082; People v Wilson, 56 NY2d, at pp 693-694; People v Lockwood, 44 NY2d, at p 770, revg on dissent below 55 AD2d, at pp 20-25; People v Edgerton, 115 AD2d 257, 259-260 [4th Dept 1985]; People v Coleman, 115 AD2d, at p 488; People v Williams, 112 AD2d 259, 260 [2d Dept 1985]; People v Bernacet, 108 AD2d 921, 922 [2d Dept 1985]; People v Cooper, 101 AD2d, at pp 9-10; People v Jones, 87 AD2d 761, 761-762 [1st Dept 1982]; People v Lindo, 85 AD2d, at p 645; People v Collazo, 98 Misc 2d, at pp 63-65.) Whenever a defendant is interrogated during an unnecessary delay in his arraignment, the courts presume that the delay was for the purpose of taking the statement, and the prosecution has the burden of rebutting this presumption by proving *905 that the delay was not for that improper purpose. (People v Cooper, 101 AD2d, at p 10; see, People v Blake, 35 NY2d 331, 340 [1974].)
Applying the law to the facts of the instant case, it is obvious that defendant was denied his right to counsel when he was removed from the holding pens and twice interrogated.
Defendant was taken into custody at 10:50 p.m. on September 23, 1985. Although the police claim that he was not formally arrested until 3:00 a.m. on September 24, the time period for determining whether a delay in arraignment is unnecessary begins at the former time (People v Edgerton, 115 AD2d, at p 259; People v Cooper, 101 AD2d, at p 3, n 1), for otherwise the police could hold and interrogate a defendant indefinitely and simply claim that he was never formally arrested. (See, Dunaway v New York, 442 US 200, 213-214 [1979].)
Defendant gave an exculpatory statement under interrogation prior to the formal arrest, and by no later than 5:30 a.m. on the 24th, the police had decided to charge him with robbery in the first degree. He was fingerprinted at Central Booking in the courthouse and his NYSID sheet was received at 10:29 a.m.
As far as the record shows, then, he was ready for arraignment by 10:29 a.m. However, he was yanked out of the holding pens at 6:30 p.m., interrogated, gave an inculpatory statement, and then was interrogated again, giving another inculpatory statement. The arraignment did not occur until some unspecified time on September 25.
The delay in the arraignment was patently unreasonable. Even if defendant was arraigned at 12:01 a.m. on the 25th (see, People v Cooper, 101 AD2d, at p 6, n 5), that would mean that he was not arraigned until 26 hours after his arrest. And since his processing was completed by 10:29 a.m. on the 24th, it was obviously unnecessary for his arraignment to be delayed for over 13 hours from that point in time. (People v Lockwood, 44 NY2d, at p 770, revg on dissent below 55 AD2d, at p 21 [defendant arrested at 10:00 p.m., not brought to courthouse for 20 hours, and then taken out of pens for interrogation by Assistant District Attorney]; People v Cooper, 101 AD2d, at pp 2, 4-5, 11 [defendant arrested at 2:00 p.m., fingerprinted at 4:30 a.m., repeatedly interrogated, and then arraigned at 2:00 p.m.]; People v Jones, 87 AD2d, at pp 761-762 [20-hour delay between arrest and arraignment; defendant *906 interrogated by Assistant District Attorney while in courthouse awaiting arraignment]; People v Lindo, 85 AD2d, at p 645 [at least a 20-hour delay; defendant interrogated while in courthouse awaiting arraignment]; People v Collazo, 98 Misc 2d, at pp 60-61 [defendant arrested at 8:00 p.m., brought to courthouse for arraignment at 10:00 a.m., interrogated by Assistant District Attorney at 1:00 p.m., and arraigned at 6:00 P.M.].)
Since there was an unnecessary delay in defendant’s arraignment, it must be presumed that that delay was for the improper purpose of obtaining a statement from him in the absence of counsel, and it was the prosecution’s burden to rebut this presumption by proving that the delay was not for that purpose. (People v Cooper, 101 AD2d, at p 10; see, People v Blake, 35 NY2d, at p 340.) Here, the prosecution offered absolutely no proof to justify the delay. Indeed, although the hearing was adjourned to provide Assistant District Attorney Paynter the opportunity to testify, the prosecution declined that opportunity on the adjourned date. In fact, the prosecution has not even suggested that a proper justification exists for the delay. Thus, the presumption has not been rebutted, and the court finds that the delay was for the purpose of taking statements from defendant in the absence of counsel.
As a matter of fact, the court would so find even in the absence of the presumption. When a defendant in Queens Criminal Court is fully processed by 10:29 A.M., his failure to be arraigned for over 13 hours thereafter is almost certainly not the fault of the courts. And when it is known that the defendant refused to give an inculpatory statement during postarrest interrogation, and that he was yanked out of the pens many hours later and gave inculpatory statements under multiple interrogations, the conclusion is almost inescapable that the delay was for the purpose of obtaining those statements, particularly since, although the complaint was not signed and filed until September 25 (after all the statements had been made), the yellow-back sheet of the Criminal Court papers was prepared for an arraignment on September 24. (People v Cooper, 101 AD2d, at pp 2, 4-5, 11 [defendant arrested at 2:00 p.m., complaint filled out at 10:30 p.m., defendant fingerprinted at 4:30 a.m., repeatedly interrogated at precinct until confession at 11:00 a.m., and then arraignment at 2:00 p.m.]; People v Jones, 87 AD2d, at pp 761-762 [delay of 20 hours, during which Assistant District Attorney interrogates defendant in courthouse while awaiting arraignment]; *907 People v Collazo, 98 Misc 2d, at pp 60-61, 63-64 [defendant arrested at 8:00 p.m., brought to courthouse for arraignment at 10:00 a.m., complaint prepared but not signed pursuant to Assistant District Attorney’s instructions, defendant interrogated by Assistant District Attorney at 1:00 p.m., and arraigned at 6:00 p.m.].)
Since defendant’s statements to Detective DeRosalia and Assistant District Attorney Paynter were obtained in violation of defendant’s right to counsel, those statements are ordered suppressed.
The exculpatory statement defendant made within a few hours of his arrest, however, was not occasioned by any unnecessary delay in arraignment, and was thus not obtained in violation of his right to counsel. Nor was it obtained in violation of defendant’s Miranda rights or due process, as Officer Pepey testified that defendant waived those rights, and there was no evidence to indicate that the officer used any threats, force, promises, or coercion of any sort which would have made the statement involuntary. (People v Dunbar, 71 AD2d 805, 805-806 [4th Dept 1979].) Nor is that statement suppressible on the ground that defendant’s arrest was without probable cause, since the police had probable cause to arrest defendant when DeCosta told them that defendant had tried to rob him. (People v Ayala, 70 AD2d 661, 661-662 [2d Dept 1979].)
Finally, Moore’s statements during his initial encounter with the police are not subject to suppression because, although the record does not establish that the statements were preceded by Miranda warnings, it also does not establish that defendant was in custody when he made them, or, if he was then in custody, that the police had questioned him at that time. (Miranda v Arizona, 384 US 436, 444 [1966].)
WADE ISSUE
"[A] pretrial identification procedure * * * may be so unfair as to amount to a denial of due process of law.” (People v Ballott, 20 NY2d 600, 605-606 [1967]; emphasis added.) However, where there is no identification "procedure”, but instead a witness gratuitously points out a person as being a criminal, due process concerns are not implicated. (See, People v Belushi, 114 AD2d 463, 464 [2d Dept 1985].)
In the instant case, there were no pretrial identification *908 procedures. Without any involvement by the police, DeCosta pointed defendant out as one of those tried to rob him. Thus, there was no due process violation in this case. Accordingly, DeCosta will be allowed to identify defendant at trial and to testify to his out-of-court identification of him.

 Both of the codefendants were charged in instant indictment, have pleaded guilty, and been sentenced.