OPINION OF THE COURT
Meyer, J.
 A jury charge which, despite defendant’s request, fails to include as part of its instructions concerning circumstantial evidence that the circumstantial facts proved must exclude every hypothesis but guilt constitutes reversible error. In People v Ford, there should, therefore, be a reversal and a new trial ordered. In People v Ladson, however, there should be an affirmance, the errors argued having either not been preserved or being within the Trial Judge’s discretion and unreviewable.
I
Perry Dillard testified that in the early morning hours of July 31, 1980, from his second floor apartment, he overheard several male voices coming from outside and below a window in his kitchen, which faced Bergen Street: "I heard somebody say 'Give me your box’. Then I heard somebody say, 'Why you want to take my box?’ Then I heard somebody say, 'If you don’t give up the box, shoot him.’ ” Initially Dillard was not concerned but, upon hearing a shot, he looked outside and saw three males, one of whom, the victim, Brian Buchanan, he knew. Buchanan was standing on Bergen Street near the *434 corner of Kingston Avenue and between the two others, holding a radio. He was struggling over it with one of the men, who was dressed in green (later identified as defendant Ford). The third individual (later identified as defendant Philip Ladson), was holding a plastic shopping bag with his right hand in the bag and his left holding the handle. The victim, still holding the radio, and Ford then ran together down Kingston Avenue. Ladson took a different path. By the time Dillard had moved from his kitchen to his bedroom to be able to see Kingston Avenue (which took about half a minute), Buchanan was lying on the sidewalk and Ford, carrying the radio, had run past where Buchanan lay, returned and was standing over him. Eventually Ladson also returned, swinging the plastic bag as he walked. Autopsy showed that Buchanan had been shot in the back and that the bullet, which passed through his heart and lung, could have been fired from a distance ranging from 18 inches to 100 feet.
Officer Freeman, the first policeman on the scene, testified that Ford, who was standing on a nearby corner when he arrived, told the officer that Buchanan was his friend. He was upset and crying and later accompanied another officer to the home of the victim to inform the family. He also testified that one of the men was carrying a radio.
Neither Ford nor Ladson took the stand but both had been questioned by Detective Skala, who testified as to the statements they made. Ford’s statement was that while the three were knocking on the door of a friend, who lived on Revere Place, he saw a light-skinned male and heard someone shout, "Now I’ve got you.” They turned, ran down Revere to Bergen Street and when they had run about half to three quarters of the way down Bergen toward Kingston Avenue, a shot rang out. He and Buchanan continued to run and turned onto Kingston Avenue where Buchanan fell to the ground.
Ford’s theory at trial was that Mark McKurdy had shot Buchanan. McKurdy, a light-skinned black, was a former police officer who had been convicted for a handgun assault and discharged from the force but on July 31, 1980 was on release pending appeal. Buchanan, four months before his death, had told police that he had witnessed McKurdy commit a bow and arrow shooting of a witness to the handgun assault. Buchanan had made a taped statement regarding the alleged incident. Ford’s counsel tried to show at trial, through the *435 testimony of a police officer, that McKurdy, therefore, had a motive to kill Buchanan. Buchanan’s taped statements, however, had been discredited by the police and he had never testified at McKurdy’s trial for assault. Pursuant to stipulation, the jury was informed that Buchanan had not testified at McKurdy’s trial. Ladson’s attorney asked for a further stipulation that the person shot with the bow and arrow had been a witness to the prior handgun assault by McKurdy and had been unable to testify at McKurdy’s trial because of his injury, but the Trial Judge ruled that out as too remote and not sustained by the record of the McKurdy trial.
Ladson’s statement to Skala made no mention of anyone shouting, "Now I’ve got you” while they were on Revere Place, and indicated that the three boys had not started running until, as they walked up Revere toward Bergen and neared the corner, they heard a shot. No gun was ever found nor did anyone other than Dillard testify concerning Ladson’s having a plastic bag, but Skala testified to a statement by Dillard made in his presence to an Assistant District Attorney in which Dillard stated that "he heard a shot and observed an expression of shock on Mr. Buchanan’s face. He stated that the third male was standing behind Mr. Buchanan with his arm out stretched [sic] with a plastic bag over the hand and it simulated positioning the gun in Mr. Buchanan’s back.”
Although defendant and Ladson were charged with two counts of murder in the second degree (intentional murder and felony murder; Penal Law § 125.25 [1], [3]) and criminal possession of a weapon in the second degree (Penal Law § 265.03), the Trial Judge submitted to the jury as lesser included offenses manslaughter in the first degree, manslaughter in the second degree and criminal possession in the third degree.
The court charged the jury, as part of its instructions on how to consider evidence, that it was entitled to draw reasonable inferences from the testimony and exhibits and that: "The defendants are entitled to every inference in their favor, which can reasonably be drawn from the evidence. And where two inferences may be drawn from the evidence, one consistent with guilt and the other consistent with innocence, each defendant is entitled to the inference consistent with innocence.” It followed that statement with instructions concerning weighing evidence and determining credibility and then *436 charged, with respect to circumstantial evidence, as set forth in the margin.*
Then, after instructions on expert witnesses and the presumption of innocence, the Trial Judge charged, as part of his instruction on reasonable doubt, that: "The doctrine of reasonable doubt must be applied by you to every element or ingredient necessary to constitute the crimes charged. A defendant cannot be convicted upon suspicion or even strong probabilities. If the evidence against a defendant is equally consistent with innocence and guilt, the jury must find the defendant innocent. The guilt of the defendant has not been proven beyond a reasonable doubt.”
Ford’s attorney had earlier submitted a two-page request on circumstantial evidence, which included the statement that, "The direct evidence must exclude to a moral certainty, every other reasonable hypothesis; in other words the facts which *437 are directly proved must be inconsistent with his innocence.” After the court’s charge he excepted, referring to his earlier request and noting that the court should have charged that "the evidence with respect to circumstantial evidence must be [sic] exclude every other hypothesis of guilt, where it is based on circumstantial evidence.” Ladson’s counsel submitted no similar request nor did he except to the charge as given. Both had, however, moved for trial orders of dismissal and both excepted to the lesser included charges on manslaughter first, manslaughter second and criminal possession of a weapon third, noting that they were "not requested by the defense and we had discussed this at the other [earlier] trial.”
The jury found Ford guilty of manslaughter in the second degree and criminal possession of a weapon in the third degree. Ladson, who had allegedly fired the shot, was convicted of manslaughter first and second degree possession. The Appellate Division affirmed defendants’ conviction without opinion.
Before us both defendants argue that the evidence was insufficient to present a jury question, that it was error to submit lesser included offenses, and that the charge on circumstantial evidence was prejudicially insufficient. Defendant Ladson also contends that reversible error was committed in some of the Trial Judge’s evidentiary rulings.
II
Viewing the evidence, as we must, in a manner most favorable to the prosecution and indulging in all reasonable inferences in the People’s favor (People v Malizia, 62 NY2d 755; People v Benzinger, 36 NY2d 29), we conclude that there is adequate evidence to support the jury’s verdicts. The possibility that someone other than Ford or Ladson may have committed the crime does not preclude a guilty verdict — the jury is free to assess the evidence and to reject that which it finds to be nonpersuasive. "[A] jury faced with conflicting evidence may accept some and reject other items of evidence * * * regardless of whether that evidence is circumstantial or direct” (People v Kennedy, 47 NY2d 196, 201).
A
Defendant Ford argues that the fact that a fight occurred during which an unidentified person ordered the victim shot if he did not give up the "box” is not enough to compel the *438 conclusion that he recklessly caused Buchanan’s death. This is particularly so, he argues, because Buchanan was his friend and because defendant was dazed, tearful, did not flee the scene and affirmatively aided the police in their investigation.
The jury could conclude from the positions of the three individuals and the position of Ladson’s hand in the plastic bag that it was Ford who had directed that if Buchanan did not "give up the box, shoot him” and Ladson who carried out that direction. Ford admitted his presence at the scene to an investigating officer and Dillard, who had heard the direction given, saw Ford struggling with Buchanan over the radio after the shot was fired, saw no one other than Buchanan, Ford and Ladson at that time, and saw Ford return with the radio in his hand after Buchanan fell. Though Ford’s statement to Detective Skala placed the shooting on Bergen Street closer to the Kingston Avenue intersection than to Revere Place, Detective Skala’s testimony was that he observed droplets of blood at the corner of Bergen and Revere which continued down Bergen and onto Kingston to the place where Buchanan had fallen.
The jury could conclude from the discrepancies between Ladson’s version and Ford’s version of what was supposed to have transpired on Revere, and from the discrepancy between Ford’s version of where the shot rang out and Skala’s description of where the blood trail began, that there was no other assailant. They could also conclude from the past relationship between Ford and Buchanan that the direction to shoot was made recklessly but without intention that Buchanan be caused serious physical injury, and that conclusion would be consistent with Ford being upset over Buchanan’s death and returning to assist him rather than running away.
B
Ladson emphasizes that his statement to Detective Skala placed the three boys when the shot was heard at the corner of Revere Place and Bergen Street, which is consistent with the location of the blood drops on Bergen Street and with the testimony of the witness Frederick, who was the first to arrive at the scene, that he and a police officer and Ford walked around the corner of Bergen and Revere Place to pick up Ford’s sneaker (which he had lost while running) and a radio, and inconsistent with Ford’s statement to Skala that he had thrown the radio into a doorway on Kingston when he heard *439 someone shout "get down.” He also points to discrepancies in Dillard’s statement as to the time lapse between the argument and the shot (which Dillard estimated as 10 or 15 to 20 minutes) and as to whether he ever saw the boys standing as distinct from running on Bergen Street.
This is not a case in which all of the evidence of guilt comes from a single prosecution witness who gives testimony pointing to both guilt and innocence (see, People v Jackson, 65 NY2d 265, 272) for Dillard’s version of the events finds support in Ford’s statement. There are, it is true, discrepancies concerning the time sequence, where the boys were when the shot was fired, and where the radio was after Buchanan fell, but they result from "two or more witnesses giv[ing] conflicting testimony [which] simply creates a credibility question for the jury to be determined by them in the context of the entire body of evidence before them” (id.).
Ill
Defendants were indicted for murder in the second degree (intentional murder and felony murder) and criminal possession of a weapon in the second degree (with intent to use same unlawfully, Penal Law § 265.03). The Trial Judge submitted to the jury, over objection, the lesser offenses of manslaughter in the first degree (with intent to cause serious injury, causes death, Penal Law § 125.20), manslaughter in the second degree (recklessly causes death, Penal Law § 125.15) and criminal possession of a weapon in the third degree (possession of a loaded firearm, Penal Law § 265.02). As already noted, Ford was found guilty of manslaughter second and criminal possession third and Ladson was convicted of manslaughter first and criminal possession second.
CPL 300.50 (2) requires the court, when requested by either party to do so, to give a lesser included charge for which there is a reasonable view of the evidence that would support a finding that defendant committed such an offense, but absent such a request subdivision 1 of that section commits to the discretion of the Trial Judge whether to give such a charge. Defendants concede that the impossibility test of People v Glover (57 NY2d 61) was met, as indeed they must, the only difference between the charges on the indictment and the lesser charges submitted being one of intent (People v Green, 56 NY2d 427). The only question, then, is whether the "reasonable view of the evidence” prong was met. "In that analy *440 sis the court’s evaluation of the persuasiveness of the evidence of guilt of the greater crime is irrelevant and the jury’s right to accept some part of the evidence presented by either side and reject other parts of that proof must be respected” (People v Green, 56 NY2d, at p 434).
A
Under Penal Law § 15.05 (3), "A person acts recklessly with respect to a result * * * when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur”. Here there was a reasonable view of the evidence that Ford acted recklessly within that definition. There was evidence that Ford knew that Ladson possessed a gun because during the argument, which Dillard testified lasted 10 to 20 minutes, Dillard heard either Ford or Ladson tell Buchanan to give up the "box” or he would be shot. Dillard testified that even after the shot was fired, Ford continued to struggle over the radio. Thus, the jury could have concluded that defendant knew if he continued to argue and to struggle with Buchanan that Ladson might shoot. This is enough evidence for the jury to find that defendant recklessly caused Buchanan’s death (see, People v Licitra, 47 NY2d 554; People v Garcia, 64 AD2d 555).
Similarly, there was no abuse of discretion in submitting the offense of criminal possession of a weapon in the third degree. Possession third requires only that defendant’s possession be knowing (People v Cohen, 57 AD2d 790), and there is evidence in the record to indicate that Ford knew that Ladson possessed the weapon but did not intend, himself, that Buchanan be shot. As noted before, the prior warning to Buchanan that he would be shot, whether made by Ladson or Ford, establishes knowledge on Ford’s part. His emotional turmoil after the crime was committed and the fact that the victim was his friend were a sufficient basis upon which the jury could have found he, nevertheless, did not intend that Buchanan be harmed.
B
Ladson argues only that there was no reasonable view of the evidence warranting submission of manslaughter first because there was no evidence to show that he shot Buchanan intending only to hurt him, but not to kill him. The argument turns on the fact that the bullet pierced Buchanan’s lungs and *441 heart. There was, however, also evidence that Buchanan and Ford were struggling over the radio at the time, from which the jury could have concluded that the gun was fired with intent to cause serious injury but not death and caused death only because Buchanan’s movements during the struggle resulted in the bullet piercing his heart.
IV
Defendants argue that the circumstantial evidence charge was so inadequate as to constitute reversible error. While we agree that the charge was erroneous and, on that basis, reverse defendant Ford’s conviction, the error is as to defendant Ladson beyond our jurisdiction, his attorney having failed to object to the charge on this ground (People v Teeter, 47 NY2d 1002, 1003; see, People v Foster, 64 NY2d 1144, 1146; People v Cona, 49 NY2d 26, 33-34).
In People v Sanchez (61 NY2d 1022, 1024), we held that it was not necessary that a circumstantial evidence charge use the words "moral certainty” but emphasized that "the jury should be instructed in substance that it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence.” The reason behind these requirements is articulated in People v Kennedy (47 NY2d 196, supra); People v Benzinger (36 NY2d 29, supra) and People v Cleague (22 NY2d 363). In Cleague, we noted that "circumstantial evidence is as nothing unless the inferences to be drawn from the circumstances are logically compelling. The danger, therefore, with the use of circumstantial evidence is that of logical gaps — that is, subjective inferential links based on probabilities of low grade or insufficient degree — which, if undetected, elevate coincidence and, therefore, suspicion into permissible inference” (22 NY2d, at p 367). Benzinger is probably the clearest statement of the reason for the "exclusion of every reasonable hypothesis of innocence” language. That opinion states (36 NY2d, at p 32): "The oft-stated rule with respect to convictions based exclusively upon circumstantial evidence is that for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude 'to a moral certainty’ every reasonable hypothesis of innocence. (E.g., People v. Borrero, 26 N Y 2d 430, 434-435; People v. *442 Cleague, 22 N Y 2d 363, 365-366.) The reason for the current application of this rule is not that circumstantial evidence is thought to be weaker than direct evidence, since the reverse is frequently true. Rather, the rule draws attention to the fact that proof by circumstantial evidence may require careful reasoning by the trier of facts. By highlighting this aspect, the rule hopefully forecloses a danger legitimately associated with circumstantial evidence — that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree (see People v. Cleague, supra, at p. 367). In the end, the application of the test becomes 'a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts.’ (People v. Borrero, supra, at p. 435; People v. Wachowicz, 22 N Y 2d 369, 372.)” People v Kennedy echoes the reasoning of the two earlier cases (see, 47 NY2d, at pp 201-202, 204).
People v Morris (36 NY2d 877) is not to the contrary. There we upheld a charge which did not state "that the facts proved must exclude * * * every reasonable hypothesis of innocence,” but the charge as given in that case (see, 36 NY2d, at p 879, n) was that "it must appear that the inference drawn is the only one that can fairly and reasonably be drawn from the facts [and] that any other explanation is fairly and reasonably excluded” (emphasis supplied). Thus, the charge clearly conveyed the exclusion concept, as does the pattern charge contained in New York Criminal Jury Instructions, in spelling out for the jury the reasoning process to be followed in assessing circumstantial evidence (1 CJI [NY] 9.05, at 475-476; see also, 1 CJI [NY] 9.10, at 482).
Here although the charge informed the jury that as between two permissible inferences defendants were entitled to the one consistent with innocence and that the People must prove every element of a crime beyond a reasonable doubt, the former was part of the general introductory portion of the charge concerning inferences and the latter was given in a discussion of weighing proof. Neither was directly related, as it should have been, to the "complex and problematical reasoning process necessarily undertaken in cases of purely circumstantial evidence” (People v Barnes, 50 NY2d 375, 381; accord, People v Benzinger, loc. cit., supra).
Not only was the charge erroneous in failing to advise the *443 jury as part of the charge on circumstantial evidence that the facts proved must exclude every reasonable inference of innocence, but also it incorrectly advised the jury that "if you are satisfied beyond a reasonable doubt of the defendant’s guilt, it would be your duty to say so even though some of the facts alleged have been proved with a lower degree of certainty”, for that would permit "subjective inferential links based on probabilities of low grade or insufficient degree” (People v Cleague, 22 NY2d, at p 367, supra).
V
Ladson’s evidentiary points relate to Frederick’s testimony concerning his questioning of bystanders, Skala’s testimony concerning Dillard’s use of the word "altercation” with respect to the persons he viewed at the lineup and concerning Dillard’s statement at that time to the Assistant District Attorney in Skala’s presence, and to the refusal to allow introduction of evidence concerning the inability of the injured witness to testify at McKurdy’s trial.
As to Frederick’s testimony, he never testified to what had been said by the bystanders and his statement that he told the police when they arrived that defendants were directly or indirectly involved came in on Ford’s attorney’s cross-examination without objection.
The alleged Dillard errors were not preserved and the Trial Judge was well within his discretion in ruling that the additional stipulation concerning McKurdy sought by Ladson’s attorney was not based on the record of the McKurdy trial and, in any event, was too remote. Those rulings are, therefore, not reviewable by us.
For the foregoing reasons, the order of the Appellate Division in People v Ford should be reversed and a new trial ordered and its order in People v Ladson should be affirmed.
Chief Judge Wachtler and Judges Jasen, Kaye, Alexander and Titone concur; Judge Simons taking no part.
People v Ford: Order reversed and a new trial ordered.
People v Ladson: Order affirmed.

 The charge on circumstantial evidence was as follows:
"Now, members of the jury, any fact in issue in a criminal case may be proven either by direct evidence or by circumstantial evidence. Direct evidence means what the word implies. It is given by persons as to what they actually saw or heard or smelled or touched or felt, tending to prove the act taking place.
"In other words, unless you have actually photographs or moving pictures of the act taking place or an eyewitness of necessity you must rely on other things or other evidence.
"Circumstantial evidence consists of a chain of circumstances which leads from the proof of things seen and known down to the establishment of the unknown or the unseen. That is some ultimate fact that may be in issue. Witnesses who provide circumstantial evidence do not testify that they saw the defendants commit the crime. Instead, the witnesses testify to a variety of facts which may permit the inference or conclusion that the defendants committed the crime.
"Circumstantial evidence relates to collateral facts from which experience has taught us that we may logically and clearly conclude that some main fact does or does not exist * * * [here several examples were given and then the charge continued].
"So, in the presentation of facts and circumstances in a criminal case, some of them may be proved with more and some with less assurance of certainty. That is inevitable in the presentation of evidence during a criminal trial. Some facts are proved more satisfactorily than others. You should give to each fact the just and true weight that you in the exercise of your judgment decide it ought to have. Thus, if you are satisfied beyond a reasonable doubt of the defendant’s guilt, it would be your duty to say so even though some of the facts alleged may have been proved with a lesser degree of certainty than others.
"The law makes no distinction between direct and circumstantial evidence. Any fact in issue in a criminal case may be proved by circumstantial evidence.”