THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY BORAZZO, Appellant.

Second Department, May 9, 1988

## APPEARANCES OF COUNSEL

*Philip L. Weinstein (Leonard E. Noisette* of counsel), for appellant.

*William L. Murphy, District Attorney (Karen Fisher McGee* and *Yolanda L. Rudich* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

On August 16, 1984, the defendant attempted to sell jewelry, credit cards, and a stolen car to an off-duty housing police officer, who then called the police. The defendant was subsequently arrested at approximately 3:00 A.M. by Police Officer Barbara Forte, who read him his *Miranda* rights. In a search incident to the arrest, the defendant was found to be in possession of a wallet containing credit cards belonging to a Robert Bonner. In the stolen motor vehicle, the police found suitcases containing stereo equipment and clothing also belonging to Bonner. The police attempted to call Mr. Bonner to determine if this property had been lost or stolen, but with no

success. About five hours after his arrest for grand larceny auto and criminal possession of stolen property, the defendant agreed to speak to Detective Robert Deutsch without counsel. Detective Deutsch again gave the defendant his *Miranda* rights. The defendant claimed to have purchased the car and the property from a black male for $50. At 9:00 A.M. the defendant was transported to the Criminal Court of the City of New York, Richmond County, where the arraignment was to be held after the complaint was prepared and signed.

Further efforts by Police Officer Forte to contact Bonner continued to be unsuccessful. Early in the afternoon on the 16th, at approximately 1:15 P.M., Police Officer Forte left the Criminal Court to return to the precinct, where she learned that the dead body of Robert Bonner had been found in his apartment, the victim of a homicide.

The police officers investigating the murder were informed by Detective Deutsch that property belonging to Bonner had been discovered on the defendant. After speaking to Officer Forte, two detectives proceeded to Criminal Court, and, before the felony complaint was typed and signed, they removed the defendant from the holding cells, read him his *Miranda* rights, and began to question him with regard to the Bonner murder. This occurred at about 2:00 P.M.

The defendant thereafter gave a statement to the detectives and the Assistant District Attorney in which he alleged that he had never been in Bonner's apartment, and that he had purchased the car and other property from a white male for $25. Questioning continued for approximately one hour, whereupon the defendant was returned to the holding area to await arraignment.

Police Officer Forte returned to the Criminal Court and at about 2:30 P.M. she signed the complaint while the defendant was being interviewed by the other detectives.

While being returned to the holding pen, the defendant complained of an injury to his thumb and Police Officer Forte was told to take him to the hospital. They arrived at the hospital at approximately 3:45 P.M. and remained there until 7:00 P.M. After the defendant was treated, he was returned to the precinct to be lodged overnight because the Criminal Court was closed. The defendant was arraigned at approximately 3:00 P.M. on August 17.

Testimony at trial established that Bonner's death had occurred either late on August 15 or early on August 16, 1984,

from multiple stab wounds and blunt injuries to the body. Fingerprints recovered from objects at the murder scene were identified as the defendant's. Other prints belonged either to the decedent or could not be identified because of poor quality.

In addition to the wallet containing credit cards belonging to the deceased, stereo equipment and suitcases found in the stolen motor vehicle were also identified as belonging to Bonner. Jewelry which the deceased was observed wearing at approximately 6:15 P.M. on August 15, 1984, was recovered from the defendant, while items of clothing, including blue jeans with blood stains, were found in the stolen motor vehicle.

On this appeal the defendant argues that the statements he gave when he was questioned at the Criminal Court should be suppressed. He contends that the police deliberately and unjustifiably prevented his timely arraignment in order to interrogate him without counsel present, and that such an unnecessary delay was designed to afford the police an additional "opportunity for prearraignment interrogation or was otherwise calculated to deprive defendant of his right to counsel" (People v Wilson, 56 NY2d 692, 694; People v Williams, 112 AD2d 259; lv denied 66 NY2d 923).

The defendant's argument is apparently based on two separate theories. First, that the delay was intentionally designed to allow the police to interrogate him prior to arraignment when the right to counsel had not yet attached, and, second, that when he was placed in the holding cells at the Criminal Court his arraignment was imminent, and thus the accusatory process had begun, mandating the presence of counsel.

█ The defendant's contentions are without merit. Since the complaint had not yet been drawn up at the time the defendant was removed from the Criminal Court detention cells, his arraignment would not have taken place in any event during the one hour in which he was being questioned. There is nothing in this record which would indicate that the interrogation was intended to, or in fact did, delay the arraignment

Moreover, the 24-hour delay between 3:00 P.M. on August 16 and 3:00 P.M. on August 17 resulted from the defendant's request for, and receipt of, medical attention. Upon his release from the hospital, the Criminal Court was closed and he had to be housed overnight at the 120th Precinct. It should be noted that he was not interrogated during this period and that no further statements were taken from him. Therefore, it

cannot be said that the delay was designed to afford the police an opportunity to interrogate him or deprive him of his right to counsel (see, People v Wilson, supra; People v Williams, supra). Furthermore, even if his interrogation at the Criminal Court did briefly delay his arraignment, any delay was justified since the police were investigating the defendant's possible involvement in the Bonner murder, of which they were unaware at the time of his initial arrest on the theft charges (see, People v Hopkins, 58 NY2d 1079; People v Wilson, 133 AD2d 790).

Although the defendant contends that his interrogation occurred when arraignment was imminent and therefore his right to counsel had indelibly attached (see, People v Rodriguez, 11 NY2d 279), the mere fact that the defendant was brought to Criminal Court is not dispositive of the issue. Where, as here, the complaint had not been drawn up, the mere fact that the defendant was in custody "awaiting arraignment" was not sufficiently accusatorial to cause his right to counsel to attach (People v Wilson, 56 NY2d 692, supra).

The defendant further claims that his conviction should be reversed due to the fact that the court failed to give an appropriate circumstantial evidence charge, in that it failed to instruct the jury "that the circumstantial facts proved must exclude every hypothesis but guilt" (see, People v Ford, 66 NY2d 428, 433; People v Sanchez, 61 NY2d 1022).

While there is some question as to whether this issue was properly preserved for appellate review, insofar as the defendant did not specifically request the court to charge "that the evidence must exclude every reasonable hypothesis but guilt", under certain conditions failure to give a proper circumstantial evidence charge or the use of a faulty charge, may warrant reversal as an exercise of discretion in the interest of justice even in the absence of an objection (see, People v Perrotta, 121 AD2d 659; People v Bernardo, 83 AD2d 1).

A circumstantial evidence charge need not use the exact language prescribed in Ford and Sanchez (supra), but a careful review of the charge in question reveals that it was lacking with regard to any language which "clearly conveyed the exclusion concept" (People v Ford, supra, at 442). However, the failure to so charge is not helpful to the defendant in light of the overwhelming evidence of his guilt. The error was harmless (see, People v Allen, 127 AD2d 840, lv denied 69 NY2d 947; People v Blackshear, 112 AD2d 1044, lv denied 66 NY2d 917).

The People's case rested entirely on circumstantial evidence; nevertheless, the evidence was of such quality and quantity that it was clearly sufficient to exclude every reasonable hypothesis but guilt.

There is, however, merit to the defendant's claim that his conviction for burglary in the first degree rests on legally insufficient evidence and must be reversed. There is nothing in the record which would tend to establish that the defendant entered or remained *unlawfully* in the decedent's apartment (Penal Law § 140.00 [5]; *People v Leonard,* 62 NY2d 404; *People v Brown,* 25 NY2d 374).

The evidence adduced at trial indicated that the defendant had probably been invited into the apartment, and even if he entered with the intention to murder or rob Bonner, there can be no burglary since his original entry was not unlawful *(see, People v Leonard, supra; People v Brown, supra; People v Insogna,* 86 AD2d 979).

We find the defendant's remaining contentions to be without merit.

Accordingly, the judgment appealed from should be modified, on the law, by reversing the conviction for burglary in the first degree, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment should be affirmed.

MANGANO, J. P., LAWRENCE, SPATT and BALLETTA, JJ., concur.

Ordered that the judgment is modified, on the law, by reversing the conviction for burglary in the first degree, vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.