■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL QUARTIERI, Appellant.—Appeal by the defendant from two judgments of the Supreme Court, Queens County (Demakos, J.), both rendered August 1, 1988, convicting him of murder in the second degree (two counts), and robbery in the first degree under Indictment Number 266/86, and criminal possession of a weapon in the third degree (two counts), and unlawfully wearing a body vest under Indictment Number 293/86, upon jury verdicts, and imposing sentences. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement officials and to suppress identification testimony.

Ordered that the judgments are affirmed.

On January 7, 1986, at approximately 5:30 A.M., the defen-

dant was arrested on various weapon charges after he was found to be in possession of a shotgun, a nine millimeter handgun, ammunition and a hand grenade which later proved to be inoperable. That evening, while the defendant was awaiting arraignment, the detectives investigating a "crack house" robbery/homicide which had occurred a month or so earlier showed the defendant's photograph to a victim of that robbery, who positively identified him as one of the assailants. As a result of the identification, the defendant was removed from central booking, where he was awaiting arraignment so that he could be questioned regarding his involvement in the "crack house" incident. The record reveals that the defendant was removed from central booking at 8:15 P.M. He was brought to the 105th precinct and advised of his *Miranda* rights sometime between 8:40 and 8:50 P.M. Immediately upon receiving the *Miranda* warnings, the defendant, although he denied actually shooting anyone, admitted planning the robbery and being present during its commission.

The following day, on January 8, 1986, at approximately 11:45 A.M., the defendant was placed in a lineup and identified by three of the four individuals present who had been robbed at gunpoint while inside the crack house. Later that same evening, at 10:00 P.M., the defendant was arraigned on the weapons charges stemming from his arrest the preceding day as well as the charges brought against him as a result of the investigation into the crack house incident.

The defendant claims that the police deliberately delayed his arraignment, in degradation of his right to counsel, so that they could interrogate him. He also contends that, since he was placed in a holding cell at central booking, his arraignment was imminent and, thus, it triggered the beginning of the accusatory process mandating the presence of counsel.

We find no merit in the defendant's claim that his arraignment was strategically delayed so that he could be questioned outside the presence of counsel. The record demonstrates that the timing of the interrogation was fortuitously prompted by his identification as a participant in the crack house robbery and homicide, and, thus, the delay in his arraignment was justified *(see, People v Blount,* 163 AD2d 482; *People v Borazzo,* 137 AD2d 96). As we indicated in *People v Borazzo (supra),* where the police are investigating a defendant's possible involvement in an unrelated crime, one which they were unaware of at the time of his initial arrest, a delay in arraignment may be warranted. Such was the case here where, prior to his being arraigned, the defendant's participation in the

crack house robbery and homicide became known to the police.

Within an hour of his removal from central booking and almost immediately after his interrogation began, the defendant voluntarily signed a *Miranda* card and admitted his participation in the robbery. Accordingly, the bulk of the delay, which the defendant erroneously suggests is demonstrative of a deliberate attempt to deny him his right to counsel, occurred after he made the statements which he now claims warrant suppression.

As a general rule, an "unnecessary delay in arraignment, without more, does not cause the accused's critical stage right to counsel to attach automatically and, absent extraordinary circumstances, a delay in arraignment is but one factor to consider in assessing the voluntariness of a confession" *(People v Mosley,* 135 AD2d 662, 663-664; *People v Hopkins,* 58 NY2d 1079; *People v Holland,* 48 NY2d 861). In the case at bar, where the delay in the defendant's arraignment occurred as a result of his identification by a victim in an unrelated crime, and the police were unaware of his involvement in this crime when they initially arrested him, we cannot say that the delay was unnecessary or calculated to deprive the defendant of his right to counsel. Furthermore, the defendant does not dispute the voluntariness of his confession.

The defendant seeks to bolster his claim that he was deliberately denied his right to counsel by contending that the hearing court did not properly credit the testimony of the attorney who represented him at his arraignment. The attorney testified that he had advised the police immediately after the defendant's arrest that he was represented by counsel. He also testified that he was waiting in the arraignment part when, unbeknownst to him, the defendant was removed from the holding cell for the sole purpose of being interrogated and placed in a lineup. Nonetheless, the record supports and we agree with the hearing court's conclusion that the attorney's testimony was incredible, unsubstantiated and riddled with inconsistencies.

In this regard, we note that the attorney was unable to recall the name of the officer or officers he allegedly spoke with or the precinct he supposedly called. Moreover, while the attorney claimed to have appeared in the arraignment part on the evening of January 7, 1986, and he claimed to have waited there for the defendant for several hours, a notice of appearance was not filed with the court until January 8, 1986. In any event, it is axiomatic that great deference is to be ac-

corded a fact-finder, in this case the hearing court which had the opportunity to view the witness, hear the testimony and observe his demeanor (see, People v Bleakley, 69 NY2d 490). We decline to disturb the determination of the hearing court, which finds ample support in the record.

The defendant also seeks to suppress the lineup identifications on the ground that they, too, were occasioned by the delay in his arraignment. However, as we held in People v Mosley (supra), even if the delay in the arraignment had been improper, the defendant was not entitled to counsel at the lineup. Therefore, no violation of his right to counsel occurred at that juncture.

Nor do we agree that it was an improvident exercise of discretion for the trial court to have granted the People's motion for a joint trial of the two indictments which stemmed from the crack house incident and the weapons arrest. The defendant made various statements at the time of his arrest on the weapons charges which would have been material and admissible as evidence in chief during a separate trial held in connection with the crack house incident (see, CPL 200.20 [2] [b]). In any event, in light of the overwhelming evidence of the guilt, the joint trial of the indictments could not have altered the verdict, and, thus, was not prejudicial.

We have considered the defendant's remaining contentions and find them to be without merit. Thompson, J. P., Lawrence, Harwood and Balletta, JJ., concur.