*580 OPINION OF THE COURT
Michael J. Brennan, J.
FINDINGS OF FACT
A Dunaway-Huntley hearing was conducted on March 17, 1997, regarding statements made by the defendant to a police officer, while in custody awaiting arraignment in the Richmond Criminal Court Building at 67 Targee Street, on a charge of violating section 120.00 (3) of the Penal Law.
The sole testimony offered by either party at the DunawayHuntley hearing was that of Police Officer Wade Woods. Officer Woods’ testimony established that the defendant surrendered himself to the police at the 120th Precinct on the morning of December 4, 1996 in response to an open police complaint for the charge of assault. Officer Woods was working on desk assignment at that time and was assigned the processing of the defendant’s arrest. Officer Woods testified that he proceeded to perform the necessary tasks involved in processing the defendant’s arrest, including the taking of pedigree information. Officer Woods further stated, upon examination, that at no point in the arrest process did he question the defendant about the crime he was being charged with or any other matter. Officer Woods further testified that the defendant did not make any inculpatory or exculpatory statements during the time the arrest was being processed at the police precinct.
Officer Woods’ testimony reflects that upon completing the defendant’s arrest paperwork, he and the defendant went to the Criminal Court Building at 67 Targee Street. Officer Woods stated that he was to draw up and sign the accusatory instrument with the staff of the Richmond County District Attorney’s office. The defendant was brought to the courthouse under arrest and was to be arraigned. Officer Woods arrived at the Criminal Court at approximately 1:00 p.m. and did not meet with an Assistant District Attorney until after the District Attorney office’s lunch recess. Officer Woods testified that he met with an Assistant District Attorney for the purposes of drafting a misdemeanor complaint between 2:30 and 3:00 p.m. Then at approximately 3:00 p.m., Officer Woods entered the holding area for prisoners on the lower level of the Richmond County Criminal Court. Officer Woods then testified that he sought out the defendant, took him outside the hearing of other prisoners and administered Miranda warnings to the defendant. The defendant did at this time make certain statements to the officer. *581 The interview took perhaps 15 minutes. The People intend to introduce these statements against the defendant as part of their case-in-chief and have given notice pursuant to CPL 710.30 (1) (a). Officer Woods further testified that he then returned to the District Attorney’s office and a misdemeanor complaint was subsequently drafted and signed with the officer as the deponent. The court records indicate that the defendant was arraigned on that accusatory instrument on the same day. The defendant moves to suppress these statements as obtained after the defendant’s right to counsel had already attached and as violative of the defendant’s right to a prompt arraignment as provided by CPL 140.20 (1). Both parties have filed memoranda of law in support of their positions.
The People, in support of their position, contend that the defendant’s statements to Officer Woods in the Richmond County Criminal Court were voluntarily made. Officer Woods’ uncontroverted testimony indicates that he advised the defendant of his Miranda rights by reading them to the defendant. The People contend that the defendant then knowingly waived those rights and spoke with Officer Woods. Since no testimony to the contrary has been offered or elicited, the court accepts and adopts the foregoing. However, the mere voluntariness of the defendant’s statements to the police may not render them admissible.
The defendant was in police custody for approximately two hours for the processing of his arrest at the 120th Precinct. The defendant was not questioned there. No attempt to question the defendant took place. No testimony was offered to suggest any barrier to the questioning of the defendant existed at that time. After the cycle of arrest processing was completed the defendant was transported to the Richmond County Criminal Court. The purpose of bringing the defendant to the court was to have the defendant arraigned on the charge for which he had been arrested. Upon arrival at the court, the defendant was lodged in the holding cells located in the lower level of the court. The Richmond County Criminal Court building was erected in 1933, during the administration of Mayor Jimmy Walker. Since that time, numerous modernizations have taken place in the building but it remains that there is but a single holding area for all prisoners. There is no segregation of prisoners, as to the status of their proceedings. All prisoners are merely held in one of several holding cells beneath the API courtroom, where arraignments take place. There are no separate interview rooms or facilities for defendants to meet with *582 counsel. It is common practice for both appointed and private counsel to perform initial client and other prehearing interviews at the bars of the holding cells. It is also common practice for prisoners held in these cells to speak to attorneys as they pass through conducting interviews with clients. It cannot be ascertained whether the defendant in this case spoke to an attorney in the holding cells, but it is common that defendants recognize lawyers who may have represented them in the past and speak to them about current matters. Similarly, it is common for Legal Aid Society attorneys assigned to handle arraignments to speak with defendants they have represented in the past without yet having that defendant’s paperwork. The defendant raises these facts, in support of his position, that the defendant’s right to counsel had attached when his statements were made. (People v Samuels, 49 NY2d 218, 221 [1980].) Concomitantly, the defendant contends that he had an expectation of counsel and a prompt arraignment, pursuant to CPL 140.20 (1), upon his arrival at the Richmond County Criminal Court and that by being questioned by the police, while awaiting that interview and arraignment, he was prejudiced by a deliberate and unnecessary delay in his arraignment that was used for the sole purpose to obtain statements without the benefit of counsel. (People v Coleman, 43 NY2d 222, 225 [1977]; People v Cooper, 101 AD2d 1 [4th Dept 1984]; People v Moore, 133 Misc 2d 900, on rearg 134 Misc 2d 822 [Sup Ct, Queens County 1987].)
DISCUSSION & CONCLUSIONS OF LAW
As a general rule a criminal action begins with the filing of an accusatory instrument. (People v Blake, 35 NY2d 331, 339 [1974].) The United States Supreme Court has held that upon the commencement of an adversarial criminal proceeding, the defendant has a constitutional right to counsel. (Kirby v Illinois, 406 US 682, 688 [1972].) New York has defined this right to counsel as an indelible right available to the defendant at any critical stage of prosecution. (People v Settles, 46 NY2d 154, 165 [1978].) The filing of an accusatory instrument also is generally held to be the point when the right to counsel attaches. (People v Strother, 234 AD2d 571.)
However, there are situations when the right to counsel may attach at an earlier point than the filing of an accusatory instrument due to sufficient judicial activity. (People v Samuels, 49 NY2d 218, 221, supra.) We believe that given the total *583 ity of the circumstances surrounding the physical plant and the attorney-prisoner interview facilities (or lack thereof) and procedures common in the Richmond County Criminal Court that it is impossible to determine, with certainty, whether the defendant was interviewed by an attorney in the nearly two-hour period that he was held in the cells at the court, before being questioned by Officer Woods. We can also not conclude with certainty if the defendant had spoken with a lawyer, at his own initiative, while in the cells. In either event the defendant’s right to counsel would have been deemed to have attached, just as if the defendant had sought out a lawyer in that lawyer’s office. It is also impossible to determine with satisfactory certainty whether the accusatory instrument against the defendant had been filed at the time Officer Woods interviewed the defendant, since accusatory instruments are not time-stamped by the arraignment clerk in Richmond County. It appears doubtful that the accusatory instrument had indeed been filed since the testimony of Officer Woods indicated that he returned to complete the misdemeanor complaint with an Assistant District Attorney, however, there is no way to determine the exact time the defendant’s right to counsel would attach under the traditional time of filing of the accusatory instrument analysis the People urge us to adopt. (People v Strother, 234 AD2d 571, supra.) Based on the foregoing, we find that a time of filing analysis, of when the defendant’s right to counsel may have attached, is unsatisfactory in securing the defendant the benefit of counsel at a critical stage of the proceeding. (People v Coleman, 43 NY2d 222, 225, supra.) Given the physical limitations and practices used in the Richmond County Criminal Court, the most appropriate bright-line rule may be to grant to the prearraignment defendant something akin to the historical concept of sanctuary from questioning by the police. This goes against the weight of established precedent. (See, People v Wilson, 56 NY2d 692 [1982].) But because of the very real confusion over whether this, or any, defendant had been interviewed by a defense lawyer, drawing the line at the courthouse door may best carry out the spirit of the right to the assistance of counsel at any critical stage as set out by the United States Supreme Court in Coleman v Alabama (399 US 1, 7 [1970]).
Absent granting the defendant sanctuary in the prearraignment holding cell, the defendant contends that the appropriate analysis for when the right to counsel attached in this matter *584 is a "critical stage” approach, meaning that if sufficient judicial activity has taken place at a stage prior to the filing of an accusatory instrument the right to counsel should also attach at this stage. (People v Samuels, 49 NY2d 218, 221, supra) This activity must be of such legal importance as to acquire the status of a formal proceeding that is sufficiently "judicial” in nature that a right to counsel attaches at "critical stages”. (People v Coleman, 43 NY2d 222, 225, supra) Most "critical stage” findings have resulted from court-ordered procedures, including ordered visitation of crime scenes (People v Sugden, 35 NY2d 453) and lineups (People v Coleman, supra). However, three cases upon which the defendant relies, People v Cooper (101 AD2d 1 [4th Dept 1984], supra), People v Moore, (133 Misc 2d 900, on rearg 134 Misc 2d 822 [Sup Ct, Queens County 1987], supra), and People v St. Louis (NYLJ, Oct. 25, 1993, at 25, col 5 [Sup Ct, Queens County 1993]), have dealt with the instant question of whether an unnecessary and deliberate delay in arraignment for the purpose of obtaining statements in the absence of counsel constitutes sufficient judicial activity.
The appropriate analysis of whether the defendant’s right to counsel has attached is a "critical stage” analysis. (People v Cooper, supra.) This allows a court to focus on the reasonableness of the delay in arraigning the defendant and the purpose for the delay. (People v St. Louis, supra.) In order to make a finding under a "critical stage” analysis the trial court must make a two-pronged inquiry:
(1) Was there an unnecessary delay in filing the accusatory instrument and arraigning the defendant?
(2) Was the purpose for the delay to deprive the defendant of his right to counsel so that the police could obtain an uncounseled confession? (People v Cooper, supra.)
The answer to both questions, in the instant matter, is a resounding yes. The People contend that there was no unnecessary delay in arraigning the defendant. In support of this position, the People point out that the delay was part of a normal process necessary in preparing the complaint. (People v Wilson, 56 NY2d 692 [1982], supra.) The People further contend the total four- or five-hour delay in arraigning the defendant was not unreasonable when delays of up to 24 hours have been held to be reasonable. (People v Borazzo, 137 AD2d 96 [2d Dept 1988].) We cannot agree; the purpose of the People’s delay is so clear in this matter as to make any temporal delay prejudicial to the defendant. Conversely, if the defendant was not questioned, the four- to five-hour delay he endured awaiting ar *585 raignment would have been completely reasonable and ordinary. The police had sufficient opportunity to question the defendant at the 120th Precinct. The police did not take advantage of that opportunity. Reason dictates that the police were satisfied they had established a prima facie case of assault against the defendant as evidenced by the complaint report and the defendant’s surrender. The defendant would not have been transported to the holding cells of the Criminal Court if further enhancement of the case was needed. The attempt to question the defendant only came after Officer Woods met with an Assistant District Attorney to draft an accusatory instrument. There was no testimony as to any changed circumstances in the case to justify further investigation. (People v Moore, 133 Misc 2d 900, supra.) The necessity of this questioning can only be reasonably viewed as an effort by the People to enhance the case against the defendant by obtaining statements in the absence of counsel. (Supra.)
The cases that highlight a time of filing attachment of the right to counsel deal most often with a police questioning of the defendant away from the courthouse. (People v Strother, 234 AD2d 571, supra.) In cases where the defendant has arrived at the courthouse to enter the plea and has been taken from the holding cells, and hence from the arraignment line, there is usually some fresh or changed circumstance to necessitate further investigation. (People v Quartieri, 171 AD2d 889 [2d Dept 1991].) The People rely, in their memorandum, on People v Wilson (56 NY2d 692, supra) and People v Borazzo (137 AD2d 96, supra) to support the proposition that merely being at the criminal court awaiting arraignment does not free the defendant from further questioning by the police that might reasonably delay arraignment. However, the Courts in Wilson and Borazzo each made an inquiry, similar to the second prong of the "critical stage” test, as to the purpose of the delay. (Supra.) In Wilson, the Court held that the police could question the defendant, in the courthouse, contemporaneously with the drafting of the accusatory instrument by other officers. (People v Wilson, 56 NY2d 692.) In Borazzo, the Court held that the police could question a defendant awaiting arraignment, in the Richmond County Criminal Court, on an undrafted charge, about newly obtained evidence in a separate crime, a homicide. (People v Borazzo, 137 AD2d 96, 98.) Both the Wilson and Borazzo Courts, while not explicitly undertaking a "critical stage” analysis, examined the purpose of the prearraignment questioning to determine if it was intended *586 merely to elicit statements in the absence of counsel. The Wilson and. Borazzo Courts found such circumstances as to merit new or additional investigation and questioning of a defendant. No such circumstances have been even alluded to in the case at bar. (Supra.) The People propose that a temporal delay is not enough to cause the right to counsel to attach absent "other aggravating circumstances.” Clearly, those aggravating circumstances exist here as to make any delay, no matter how brief, in arraigning the defendant for the purpose of questioning him while in the Criminal Court prejudicial. No testimony has been adduced to show other than, after consulting with the District Attorney, the officer sought to enhance what was already a prima facie case by questioning the defendant before he had counsel. This conclusion is reinforced by the fact that criminal conduct for which the defendant was in custody had taken place on November 23, 1996, some 11 days before he surrendered or was questioned. No changed circumstances or new investigation took place.
Therefore, we grant the defendant’s Dunaway-Huntley application and suppress all statements made by the defendant to Officer Woods at the Criminal Court.