[774 NYS2d 24]

# The People of the State of New York, Respondent, v Norman Schachter, Appellant.

First Department, March 18, 2004

APPEARANCES OF COUNSEL

*Robert M. Morgenthau, District Attorney*, New York City (*Deborah L. Morse* and *Mark Dwyer* of counsel), for respondent.

*Donziger Perlmutter, LLC (Adam D. Perlmutter* of counsel), for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the issue of whether, in a case where the evidence is entirely circumstantial, the trial court's refusal to give a full circumstantial evidence charge requires reversal. Defendant limits this charging error argument to the substantive offenses of which he was convicted, i.e., attempted intimidating a victim or witness in the first degree, criminal sale of a controlled substance in the third degree (two counts), attempted burglary in the second degree, attempted assault in the second degree and criminal possession of a controlled substance in the fourth degree. He makes no such argument as to the conspiracy in the fourth degree convictions (four counts), nor could he, as the evidence supporting those convictions was based largely on powerful direct evidence. We conclude, given the strength of the People's evidence as to the substantive offenses and the fact that the charge, viewed in its entirety, conveyed the essential principles applicable to a circumstantial evidence case, that reversal is not required.

In order to put the claimed error in proper perspective a brief review of the People's evidence is in order. In September of 1998, three Dutch Shepherd dogs owned by defendant and his wife, Debbie Gamiel, viciously attacked Shaun Considine, a 65-year-old author, as he walked through Central Park after his daily jog. As a result, Considine sustained bite marks, lacerations and scratches on 60% of his body—a total of about 40 bites overall. The dogs, which were heavy, knocked him to the ground and ripped off his jogging shirt and shorts. After the attack, the dogs were taken to an animal shelter, where codefen-

dant Derrick Moultrie* was working as an adoption counselor for the dogs. Shortly thereafter, Gamiel, who had been with the dogs at the time of the attack, was indicted for assault and reckless endangerment. Considine also brought a civil suit against defendant and his wife for damages for his injuries, for which he had to be hospitalized.

Thereafter, a scheme to discredit Considine in these two cases was devised: Considine would be beaten unconscious and drugs and child pornography planted on him; then, when he was hospitalized as a result of his injuries, the drugs and child pornography would be discovered and he would be arrested. To carry out this bizarre plan, defendant hired Moultrie, who accepted from defendant various money payments, including a January 22, 2001 $1,000 Western Union wire and numerous checks. Unfortunately for defendant, in recruiting assistance, Moultrie, as a result of a tip from a confidential informant-parolee whom he had contacted, unwittingly hired two undercover police officers for the project. This information enabled the police to set up a "sting" operation against the conspirators. There were 16 telephone calls between defendant and Moultrie on the day of Moultrie's first meeting with the undercover officers.

Over the next month, detectives surveilled defendant and Moultrie, monitoring the voluminous telephone conversations between them and between Moultrie and the undercover officers, and watching the in-person meetings between defendant and Moultrie. This surveillance included observations of Moultrie supplying the officers with drugs (heroin and cocaine) and child pornography and waiting anxiously for confirmation when the attack was purportedly carried out at Considine's apartment on April 28, 2001, just two days before the criminal trial against Gamiel was originally scheduled to start. On the morning of the planned attack there were 16 calls between Moultrie and defendant and Moultrie and one of the undercover officers. In fact, the police had alerted Considine to the plot, removed him by stretcher from his apartment after the staged attack to string along the conspirators and ultimately spirited him safely away out of state. Even before the police removed Considine from his apartment, Moultrie had placed three calls to defendant. Over the next four hours, there were four more calls between Moultrie and defendant.

---

* By order entered simultaneously herewith, Moultrie's conviction is being affirmed.

The police also monitored the efforts of defendant and Moultrie to locate Considine in the hospital or in police custody in the aftermath of the "attack." In fact, Moultrie made 17 calls to local hospitals and the Police and Fire Departments in an effort to locate Considine. Moultrie was arrested on May 17, 2001, after he observed a team of detectives watching him. Defendant was arrested the next day in the parking lot outside the courthouse at 100 Centre Street as he tried to deliver bail money to Moultrie's wife.

While it is true, as defendant argues, that a circumstantial evidence charge is required where, as here, the evidence of guilt of the crime(s) in question is entirely circumstantial (*People v Roldan*, 88 NY2d 826 [1996]), the particular phrase "moral certainty" need not be part of the charge where the court instructs the jury "in substance" that it "must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence" (*People v Sanchez*, 61 NY2d 1022, 1024 [1984]).

Here, the court instructed the jury that defendant was entitled to every inference in his favor. The court told the jurors not to draw an inference of guilt from any fact if an inference of innocence could also be reasonably drawn from the same fact. In so charging, the court clearly conveyed to the jurors that they could return a guilty verdict only if no reasonable hypothesis pointed to defendant's innocence.

Even though some circumstantial evidence cases require a more rigorous charge, the instructions here were adequate, given the nature of the evidence presented. This was a case of compelling proof, albeit circumstantial, in view of defendant's payments of money to Moultrie and the fact that only he, defendant, had a motive to discredit Considine. Of course, as with any charge issue, the question is whether the charge, viewed as a whole, conveyed the correct legal principles (*People v Coleman*, 70 NY2d 817, 819 [1987]; *People v Whalen*, 59 NY2d 273, 279 [1983]; *see also People v Fuzzell*, 189 AD2d 686 [1993]).

Nor should we lose sight of the fact that the purpose of a special instruction about circumstantial evidence is to caution jurors about the rigorous reasoning process that must be employed when all of the evidence of guilt is circumstantial (*see People v Ford*, 66 NY2d 428, 442 [1985]). By placing emphasis on the nature of circumstantial evidence, the courts seek to reduce the danger that jurors will "leap logical gaps" by draw-

ing unwarranted conclusions from the proof (*id.*), a danger not present here since the evidence of defendant's guilt of the substantive charges was entirely circumstantial only in the most technical sense. As the record shows, the inferences of guilt that were required to be drawn were "direct and compelling" (*see e.g. People v Pile*, 170 AD2d 197, 198 [1991], *lv denied* 78 NY2d 925 [1991]; *People v Devonish*, 159 AD2d 320, 321 [1990], *lv denied* 76 NY2d 733 [1990]). The evidence that defendant acted in concert with the codefendant Moultrie in an attempted attack on Considine was so overpowering that the jury was not required to engage in any complex chain of reasoning.

In that regard, the proof included a multitude of conversations between defendant and Moultrie before and after the purported attack on Considine, including those that took place immediately after Moultrie's meetings with the undercover officers; defendant's meetings with Moultrie in a car parked outside Considine's apartment during the period they were trying to verify that Considine had been arrested or hospitalized; and defendant's various payments of money to Moultrie, as well as his furnishing the cell phone that Moultrie used during the relevant time period.

Most significantly, defendant alone, and not Moultrie, had the motive to perpetrate the attack on Considine in the unique way it had been designed, not just physically assaulting Considine but also planting drugs and pornographic material on him so that he would be discredited in the upcoming criminal and civil actions against defendant's wife. Furthermore, the case against defendant was made even stronger by the fact that his connection to Moultrie and the purported assault on Considine tracked the timeline of the criminal case against defendant's wife. Given the strength of the People's case, any instruction focusing the jurors' attention on the notion of logical gaps in the proof would only have highlighted the absence of any such gaps, thus redounding to defendant's detriment.

Not only were there no gaps in the proof but, as noted, the court provided instructions on inference-drawing that were decidedly advantageous to both defendant and Moultrie. While the moral certainty language was not used, the court's instructions, in effect, advised the jurors to convict only if the People's proof eliminated all innocent explanations for a defendant's acts. The court charged that each defendant was "entitled to every inference in his favor" and that "where two reasonable inferences may be drawn from the same facts, one consistent

with guilt and the other with lack of guilt, you must draw the inference consistent with lack of guilt." Thus, the court, by its instructions, made clear the concept that circumstantial evidence must exclude every reasonable hypothesis of innocence (*see People v Kurtish*, 165 AD2d 670, 670-671 [1990], *lv denied* 76 NY2d 1022 [1990]).

Thus, as the record shows, there were no logical gaps between the proof as to defendant's numerous and significant connections to Moultrie and the inevitable conclusion that he was Moultrie's accomplice and, indeed, the prime mover in this criminal enterprise. Moreover, the court's charge clearly explained that defendant could not be convicted if the evidence was consistent with his innocence. In such circumstances, there was no need for additional instructions, which, in any event, would not have affected the result.

We have examined defendant's other arguments and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (William Wetzel, J.), rendered May 20, 2002, as amended June 18, 2002, convicting defendant, after a jury trial, of conspiracy in the fourth degree (four counts), attempted intimidating a victim or witness in the first degree, attempted burglary in the second degree, attempted assault in the second degree, criminal sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the fourth degree, and sentencing him to an aggregate term of 10 years, should be affirmed.

NARDELLI, J.P., LERNER and GONZALEZ, JJ., concur.

Judgment, Supreme Court, New York County, rendered May 20, 2002, as amended June 18, 2002, affirmed.